*June Term,*
*1860.*

CLARK
v.
DURAND.

---

### CLARK, by his guardian, vs. DURAND.

A party who procures an insurance upon his own life, at his own expense, for the benefit of his infant child, as an intended gratuity or voluntary provision for such child, and afterwards becomes unwilling or unable to keep up the

policy, by paying the required premiums, may, while the policy still remains in his own possession, transfer the same by delivery, with the assent of the insurance company, to a third person, to be kept up by him for his own benefit, he agreeing to pay the premiums thereon.

In an action by such infant against such assignee, to recover the money paid to the latter by the insurance company upon the death of the party whose life was assured, such assignee having kept up the policy until that time at his own expense, it was *held*, that the infant could not recover, although it appeared that the assignee, at the request of the parent, had signed the declaration made prior to such insurance and on which the same was based, as guardian for the infant, (though never legally appointed as such), and was described in the policy as such guardian, and had signed a receipt as such guardian, for the money paid to him by the insurance company.

APPEAL from the Circuit Court for *Racine* County.

This action was brought in November, 1858. The complaint alleges, that the plaintiff is an infant; that sometime in the year 1851, an insurance upon the life of *Margaret Ann Clark*, the mother of the plaintiff, was effected in the Mutual Life Insurance Company of New York, for the sum of two thousand dollars, for his use and benefit; that by the procurement of the defendant, the policy of insurance was made out and issued to said defendant, as the guardian of the plaintiff, although said defendant was not, and never had been, such guardian; that while said policy was in full force, on or about the 4th day of August, 1854, the said *Margaret Ann Clark* died; that on or about the 12th day of October, said defendant received from said insurance company, as the guardian of the plaintiff, the said sum of $2,000, upon said policy of insurance, and fraudulently applied the whole of the same to his own use; wherefore, plaintiff demands judgment, &c. The defendant, by his answer, admits that said *Margaret Ann Clark* effected an insurance on her own life for the sum of two thousand dollars, as stated in the complaint, but avers that the policy was made out in his name, as the guardian of the plaintiff, without his knowledge, and was delivered to said *Margaret Ann*, who was alone the owner thereof. He also avers, that he loaned the said *Margaret Ann* the money to make the first payment on the premium, and the expenses of effecting said insurance. He admits that he has never been the guardian of the plaintiff, and alleges that about the 20th November, 1851, the said *Margaret*

*Ann*, then being the owner and in possession of said policy, informed him that she should no longer continue to pay the premium on said insurance, but should abandon the policy, and proposed to him, that inasmuch as he had paid all the premiums that had been paid on said insurance, if he would release her from repaying the same, and would take said policy as his own, and pay all subsequent payments thereon, she would surrender the same to him, as and for his own property; that he accepted said proposition, and thereupon said insurance policy was transferred and delivered to him by said *Margaret;* that he, in consideration thereof, released said *Margaret* from repaying to him the moneys before then paid by him for her, on account of said policy, and from that time until the death of said *Margaret*, continued to pay from his own funds, the premium on said policy, and treated the same as his own individual property, the whole amount paid by him, amounting in all to $214,20; that said insurance company was informed of said sale and transfer of said policy to him by said *Margaret*, and assented to the same; that he was induced to take said policy for the reason that the said *Margaret* was at that time indebted to him, and to him and one *Hill* as partners, to the amount of over $1,000, for which they had no security; and at the time of taking said policy, or soon thereafter, he agreed with said *Hill*, that he would pay the demand due to *Durand & Hill*, at the death of said *Margaret;* that said indebtedness to the defendant, and to *Durand & Hill*, has never been paid in any other manner, and that no claim therefor has been preferred against said *Margaret's* estate. He admits that in October, 1854, after the death of said *Margaret*, he received from said insurance company two thousand dollars on said policy, but avers that he received the same as his own money, and not for the plaintiff, nor as his guardian. He admits that the receipt therefor was signed by him as guardian, but avers that it was thus signed as a matter of form, that it might agree with the terms of the policy as originally issued, making no reference to the transfer thereof which had been made to the defendant, because it was more simple and easy so to transact the business, than it would have been to set

out the transfer, with a receipt in his individual capacity.

On the trial of the action, the plaintiff introduced in evidence, a copy of the application on which said insurance was granted, which was signed, "*Margaret Ann Clark*, for her son *Henry W. Clark*," and gave the name of "*Henry Wilson Clark*, son of *Joseph G. Clark, Henry S. Durand*, his guardian," as the person for whose benefit her life was proposed to be assured; also a copy of the declaration made prior to such insurance, which was signed by the defendant, and read as follows: "I *Henry S. Durand*, guardian of *Henry W. Clark*, son of *Joseph G. Clark*, of Racine, &c., being desirous of effecting an assurance with the Mutual Life Insurance Co. of New York in the sum of two thousand dollars, upon the life of *Margaret Ann Clark*, of Racine, &c., during the whole continuance thereof, do hereby declare," &c., &c.; also a copy of the policy of insurance, which was as follows: "This policy of insurance witnesseth, that the Mutual Life Insurance Company of New York, in consideration of the sum of sixteen dollars and forty cents, to them in hand paid by *Henry S. Durand*, guardian of *Henry Wilson Clark*, son of *Joseph G. Clark*, and of the quarterly premium of sixteen dollars and forty cents, to be paid on, &c., in every year, during the continuance of this policy, do assure the life of *Margaret Ann Clark*, of Racine, &c., in the amount of two thousand dollars, for the term of her natural life," &c.; and also a copy of a receipt for the amount of said policy, dated October 12th, 1854, which reads as follows: "Received, New York, 12th October, 1854, from the Mutual Life Insurance Company of New York, two thousand and forty-nine dollars and sixty-eight cents, in full for this policy and profits thereon, now cancelled by the death of *Margaret A. Clark*. HENRY S. DURAND, guardian, for *Henry Nielson Clark*."

The testimony on the part of the defendant, was in substance as follows: J. B. Talcott testified: "I was agent for the insurance company. *Mrs. Clark* effected the insurance, and took the policy in the name of *H. S. Durand*, guardian, for *H. W. Clark*; I think the policy was delivered to *Mrs. Clark*; the policy was presented to *Mrs. Clark*, and I think she got the money from *Durand*; I think she paid one and

a half years' premiums at *Durand's* office.  After she had kept the policy one and a half years, and perhaps more, she said she would abandon it.  I then saw *Durand* at her request, and advised him to keep it up for himself, and he said he would think of it; and he afterward told her he had concluded he would do so.  I told him he had better have an assignment; he thought it not important to do so; I told him he could keep it up for his own benefit.  She never called after that, or paid any attention to it; but *Durand* always paid the premiums after that time."  On cross-examination, he said: "*Durand* was agent for said insurance company before I was, and has been agent for fire insurance companies.  The policy remained as it was, in the name of *H. S. Durand*, guardian, for *H. W. Clark*, the company having no knowledge of the change.  I called at defendant's office for every premium, except the first, and the policy was in his safe; was instructed to get the premiums there, and did; think I was not present at the conversation between *Durand* and *Mrs. Clark*.  I cannot state to whom I delivered the policy; saw it every quarter at *Durand's* office."

*Durand*, the defendant, testified: "*Mrs. Clark* first spoke to me about the insurance of her life; I told her it was not best for her, because she had no means; the next I heard about it, Talcott came to me with the application; not long after that *Mrs. Clark* came to me for money to pay the premium, and I loaned it to her; I think she came to me the second and third time, and I always let her have it.  Afterwards Talcott came and asked me if *Mrs. Clark* owed me.  I said she did.  He said, why don't you take the policy for your own benefit?  I said, such women never die.  A day or two after she came to me and said she had abandoned the policy, and if it was of any use to me, I might have it.  Afterwards Talcott asked me what I had determined upon.  I asked him if I could have the policy for my own benefit, by my paying the premiums?  He said I could.  I said I would see.  I then had never seen the policy; she had always kept it.  I did take the policy from *Mrs. Clark*, and paid the premiums, and kept it up till her death.  She owed me between $300 and $400, and afterwards I loaned her $100 more.

She owed *Durand & Hill* between $600 and $700. *Hill* was uneasy as to the account, and I arranged with him that I would take the policy, and pay the *Durand & Hill* account at her death. After I assumed the policy, I never charged any premiums paid by myself; but the first premium paid by Rowley (our clerk) was charged to *Mrs. Clark* on *Durand & Hill's* books. I told him I was to pay all. Nothing was realized out of *Mrs. Clark's* estate, until 1856 or 1857. She had no property of any amount, except what was in controversy. I was the administrator of her estate; have rendered my account as such; it is not settled. I never presented my account above, or *Durand & Hill's* account against the estate, or made any claim of it. After paying all indebtedness, there is $4,000 or $5,000 left for the estate; there are no heirs except *Henry W. Clark*. *Durand & Hill* had a due bill against *Mrs. Clark* for about $100. I have not settled with *D. & H.*, but have taken up that due bill. I considered my account paid, at the death of *Mrs. Clark*, by the insurance money."

*J. M. Hill* testified: "The firm of *Durand & Hill*, had an account against *Mrs. Clark* in 1851 and 1852, between $500 and $600; *Durand* said he had a life insurance, and when *Mrs. Clark* died he would pay the account; this was in 1852. Some of the premiums were entered on our books, charged to *Mrs. Clark;* I can't tell the footing of her account to-day. I did not know when the note was paid, and did not know that it was paid until to-day. I considered the account settled at the time of *Mrs. Clark's* death; do not know of any particular transactions whereby this account was paid to *Durand & Hill*."

J. B. Rowley testified: "I entered into the employment of *Durand & Hill* about six years ago, and had charge of the books; two or three months after I went there, Talcott came in for the premium. I objected to paying; I had *Durand's* business to transact; but finally paid the premium. Some two months afterwards I called *Mrs. Clark's* atttention to her account. I read the items, and among the rest, the money paid for the premium. She said that was not right; she had got out the policy, but it was costing her so much she had

given it up, and told defendant he could have it and make what he could out of it, and that he had taken it, and was to pay the premiums. She said, I have not any money now to pay, don't know as I can ever pay; in case I die, it is to go to pay the account, and the balance goes to *Durand.* Some of the premiums were charged in the account; I paid the premiums, and such as were paid from *Durand & Hill's* funds, were charged in the account of *Durand & Hill;* the account was a continuation of *Mrs. Clark's;* could not tell the amount of it. I had charge of *Durand's* books. I am not certain that there was any account upon them until after her death, and that was against the estate; don't recollect seeing any account or vouchers against *Mrs. Clark* for *Durand* alone."

The plaintiff thereupon introduced as a witness, the county judge of Racine county, who testified: That the petition for the appointment of an administrator of the estate of *Margaret Ann Clark,* was made by *Henry S. Durand,* and sworn to by him on the 8th day of August, 1854; that the petition stated that the petitioner had for many years acted as the friend, agent and guardian of said *Margaret,* and was at that time the principal creditor of the estate ; that the petition for the sale of real estate, filed by the attorney of said *Durand,* on the 5th of May, 1856, stated that said *Durand* had an unsettled account against said estate, which would have to be settled by the court; and that by the final account rendered by said *Durand,* as administrator, there appeared to be in his hands, as such, over four thousand dollars, which had been invested by him in bank stock, and in notes and mortgages.

The circuit court instructed the jury substantially as follows: The plaintiff claims to recover for a policy of insurance, taken out by *Mrs. Clark,* for his benefit, and claims that he is entitled to recover the whole amount finally realized upon the policy, without any regard to the payment of the premiums, or who paid them. In answer to this, the defendant insists that the policy was in the first place, taken out at his expense, and that the entire expense of the policy was paid by him. If those who alone

were interested in the policy, voluntarily abandoned it, and consented that the defendant might take the policy, and keep it up, and have the benefit of the same, the claim of the party thus abandoning the policy is at an end. If the party whose duty it was to make the payment and keep up the policy, surrendered it to the defendant, consenting to a delivery of the same to the defendant, for his benefit, but has failed to make the proper transfer, to enable the party who has the equitable right to the avails of the policy, to collect the same, a court of equity would afford the relief necessary to do equity. (To which the plaintiff, by his counsel, excepted, as irrelevant, and calculated to mislead the jury.) And in this case, if the jury believe from the evidence, that the policy was procured by the mother of the plaintiff, at her own expense, and of her own volition, and she for a time caused the premiums to be paid, and finally·changed her mind, and concluded to, and did abandon the policy, and did surrender the policy to the defendant, to be kept up by him or allowed to forfeit, as he pleased, and if you find that the defendant did, at the request of the mother, *Mrs. Clark,* abandon all claims he then had against her, either for money advanced to procure said policy, or to keep the same up, or for any other purpose, and did take upon himself the risk of paying the premiums and keeping the policy alive, until the life of the insured was extinguished, he is equitably entitled to the avails of such policy. And whether his claim was in law sufficient to enable him to recover his equitable rights, as against the insurance company, is a question between the defendant and the insurance company. And if the company paid the money to the defendant, he may lawfully hold the same, until the plaintiff satisfies you that he, or some one for him, has so far fulfilled, or complied with the rules and regulations of the insurance company, as to secure the benefits to arise therefrom to the plaintiff., (To all of which the plaintiff's counsel excepted as irrelevant, immaterial and illegal.) Notwithstanding the zeal manifested in insisting that a written assignment is necessary, and that in this case there was no legal party to assign, I must instruct you that a written assignment of a policy of insurance is not absolutely

necessary, to pass the benefits thereof to a creditor, but that this may be done by a delivery and deposit of the policy for the purpose of an assignment [which] will operate as an assignment, without a formal written assignment, and this, too, when the insured is to continue to pay and keep up the premiums. (To which the plaintiff's counsel excepted, as irrelevant, immaterial and illegal.) Any transaction which gives to a creditor of the insured a right to payment out of the insurance, will be a sufficient assignment, unless the by-laws, rules and regulations of the insurance company require something more." The plaintiff's counsel requested the court to charge, "That *Henry W. Clark* was the real owner of the policy of insurance, and that *Margaret Ann Clark* could not make any valid assignment of it," which instruction the court refused to give, and the plaintiff's counsel excepted to the refusal.

Verdict and judgment for the defendant.

*Strong & Fuller*, for appellant:

1. There was no contract for an assignment sufficiently definite for a court to recognize.

2. If there ever was any such contract, it is an entirely different one from that set up in the answer.

3. If there was such a contract, it was never executed. There was no written assignment; no notice to the company of any assignment; no change of possession of the policy. The premiums, in each instance, were paid in the same manner, at the same place, and charged in the same account. There was no release of *Durand's* account, and therefore, no consideration for the assignment.

4. *Mrs. Clark* had not the legal power to assign the policy.

5. The defendant, acting as guardian, could not purchase the property of his ward.

*Cary & Pratt*, for respondent:

The verdict of the jury in this action, has determined that the insurance was effected by *Mrs. Clark* on her own life; that she took and controlled the policy; that after making several payments, she refused to pay any more, and abandoned it; that she then requested the defendant to take it,

June Term, 1860.

CLARK
v.
DURAND.

and keep it up for his own benefit; that defendant did take and assume it as his own, with the knowledge of the insurance company, and from that time paid all premiums as they fell due; and that in consideration of so taking said insurance, he assumed the payment of the account of *Durand & Hill*, due from her, and that neither that account, nor the account of the defendant, was presented against the estate of *Mrs. Clark;* so that the only legal question to be here determined is, as to her right and power so to control and transfer the policy. The party procuring such a policy of insurance, may sell or dispose of it, or abandon it at pleasure. Angell on Fire and Life Ins., § 332, p. 411; *Godsal vs. Webb*, 2 Keen Ch. R., 99.

No formal assignment was necessary to pass the benefit of the policy. A mere deposit as security was sufficient. Angell on Fire and Life Ins. § 327, p. 405; Phillips on Ins., § 80, p. 60; 11 Mees. and Welby, 10; *Wells vs. Archer*, 10 Serg. & R., 412.

July 10.

*By the Court*, DIXON, C. J.   This action was commenced, and if maintainable at all, can only be maintained upon the theory, that the plaintiff, as the *cestui que trust*, or party beneficially interested, acquired, during the lifetime of *Mrs. Clark*, an actual equitable interest in the policy, and the moneys thereby secured and agreed to be paid on her death. She effected the insurance on her own life. The policy sprang from an agreement, to which she and the insurance company were the real parties; and although the defendant, as the guardian of the plaintiff, was nominally the assured, yet during her life, and until she transferred it, she was the only person having any direct pecuniary interest in it. She received, and until the transfer and delivery to the defendant, held it in her possession, and with her own funds, or those procured by her from the defendant, paid the quarterly premiums, as they became due upon it. The true criterion by which to determine whether the plaintiff had any interest in the moneys received upon the policy, would seem to be, whether, during her life, he had such an interest in it as would have enabled him to compel *Mrs. Clark*, or the

defendant as nominal trustee, to keep up the premiums,
upon the prompt payment of which its validity and value depended, or as would have enabled him to restrain
or prevent her and the defendant from entering into and consummating the bargain which they did in relation to it. It is very evident that he was no party to the policy, or the agreement by which it was procured. The only parties, real and nominal, were the defendant, *Mrs. Clark* and the company. He furnished no part of the consideration upon which the policy was issued. If it was her intention, at the time she procured it, as it undoubtedly was, to have the money due upon it at her decease, paid over to him, or applied to his benefit, yet she was under no obligation, legal or equitable, to obtain it, or to keep it up after it was obtained. Neither she nor the defendant had made any contract or agreement with him, upon a valuable consideration or otherwise, to procure or to keep up such insurance. So far as he was concerned, it was a mere proposed gratuity or gift, a voluntary thing, which they were in no way bound to do, and which they might do or cease to do, as best suited their convenience or pleasure. He was a mere volunteer, not having any present beneficial interest, but who, it was intended at one time, should, on the happening of many contingencies, be so interested on some future occasion. He had no vested right in the policy or the moneys secured by it, and could have none until after the death of *Mrs. Clark*, he surviving her; and then only in the event of the contract, and the intention of the parties, remaining the same, and of her, or some other person in his behalf, having kept up the premiums. If it was a trust in his behalf, or by which it was intended that he should be benefited, it was executory and not executed; and it is well settled that courts will not interfere to enforce an executory trust at the instance of a volunteer. It seems quite clear, therefore, that during the lifetime of *Mrs. Clark* the plaintiff could neither have compelled the payment of the premiums, nor have prevented her from passing the policy over absolutely to the defendant. Considering the policy, as it was in fact, an executory contract between the company and *Mrs. Clark*, and the defendant consenting to

act as trustee, no reason can be perceived why it was not, like every other executory agreement, subject to such disposition, changes and modifications, as the several parties to it might see fit or consent to make, and why *Mrs. Clark*, having changed her mind in regard to bestowing upon the plaintiff the benefits expected from it, or feeling herself unable to meet the premiums, might not, with the assent of the company, transfer it to the defendant, to be held by him for his sole use and benefit, he agreeing to pay the premiums. This the jury has found she did do, and as evidence of the assent of the company, it not only appears that they, for a long period of time, received from him the premiums, but also, on her death, actually paid over to him the money thereby secured.

The record discloses no errors for which, in our opinion, the judgment of the circuit court ought to be reversed, and it is therefore affirmed, with costs.