MARY A. SWIFT

*v.*

THE RAILWAY PASSENGER AND FREIGHT CONDUCTORS' MUTUAL AID AND BENEFIT ASSOCIATION *et al.*

*Filed at Springfield September 30, 1880.*

</div>

1. ASSIGNMENT—*of insurance on life policy in equity.* A party holding a policy in an association which entitled him, in case of personal injury, to certain benefits, and the sum of $2500 to his representatives, etc., on his death, on payment of all assessments against him, and he being absent from home and indebted for assessments which he was unable to pay, sent his wife a writing that he made his life policy read for her benefit in case of his death, and for her special benefit and all that might be derived therefrom; and also wrote to her of his inability to pay his dues, and that "this makes the policy yours, if you will keep it up;" and she paid the assessments accordingly: *Held,* that this, in connection with the wife's act, amounted to an equitable assignment of the sum payable by the policy on his death, but not of the sum payable for personal injury, and that on his death she was entitled to receive the sum due on the policy.

2. LIFE POLICY—*right to assign same.* When neither the wife nor the children of an assured have any vested interest, conditional or otherwise, in an insurance of the party's life so long as he lives, but the contract is between the assured and the insurer, the assured may make an equitable assignment of the same.

APPEAL from the Appellate Court for the Third District; —heard in that court on appeal from the Circuit Court of McLean county; the Hon. OWEN T. REEVES, Judge, presiding.

Mr. H. R. BENSON, Mr. H. L. KARR and Mr. O. W. ALD-RICH, for the appellant.

Messrs. BLOOMFIELD & HUGHES, for the appellee.

Mr. CHIEF JUSTICE DICKEY delivered the opinion of the Court:

Clark Swift was a member of "The Railway Conductors' Mutual Association," etc., and by reason of his membership, under the provision of their articles of association, had an insurance, by which that company was liable to pay, in case of his death, $2500. By the rules of the association, to which he was a party, by becoming a member, it was provided that the money to arise from the insurance might be disposed of by will, and if not so disposed of, should belong to and be paid to his widow, or in case he had no widow, then to his legal heirs or representatives. Some time in 1875, while he was a member of the association, and had the dues paid up regularly, he made a will, by which he gave his two daughters, Emma and Etta, all the proceeds of this life insurance, to be paid to them at the age of 18 years, provided they both arrived at the age of 18 years, and appointed John L. White the executor of his will, and afterwards delivered his will and his certificate of membership to White.

In February, 1877, he went to California. There were then assessments due to the association, which had to be paid, in order to preserve the insurance, amounting to $38.00. Swift remained in California until May, 1878, when he died there.

His wife, and his two children by a former wife, were then living in Illinois.

In December, 1877, he wrote a letter, dated Valley Post Office, December 10, 1877, addressed to his wife, in which he said:

"My assessments of Greenman," (an officer of this association,) "are all legitimate. I wrote him when I first came west they should be paid, but I have not now the money to pay.

If I should be taken away you would get $2000, if you choose to pay the assessments. I will refund them to you, if I live. * * * The enclosed note makes the policy yours, if you wish to keep it up. * * *

<div align="right">Yours, as ever,

CLARK."</div>

In that letter he enclosed to his wife a writing, in the words following:

<div align="center">"BEAR VALLEY POST OFFICE,

*San Diego, Cal., Dec.* 11, 1877.</div>

Know all men by these presents, that this is my wish, made in sound mind, that I revoke all former life insurance policies, and do this day, Dec. 11, 1877, make my policy of the Conductors' Life and Benefit Association, read for the benefit of Mrs. M. A. Swift, in case of my death, and for her special benefit all that may be derived therefrom.

<div align="right">CLARK SWIFT."</div>

After the receipt of these papers, Mary A. Swift, the wife, paid up the assessments, amounting, as stated above, to $38.00.

The association admits its liability to pay $2500 upon this insurance, and is willing to pay it to whomsoever is entitled to receive it. John L. White, as executor of the estate of Swift, claims the money for the benefit of the children, Emma and Etta. Mary A. Swift, the wife, claims the insurance money by virtue of the instrument in writing set forth above.

This is a proceeding in chancery, instituted by Mrs. Swift, to which the association, and the executor of Clark Swift's will, are made parties defendant. Cross bills were filed and issues formed, the case heard, and by the decree of the court the bill of the complainant was dismissed, and it was decreed that White, the executor, was entitled to receive the proceeds of the amount due upon the certificate of membership of the association, and that he refund therefrom the amount of the assessments paid by Mrs. Swift, the complainant, amounting, with interest, to the sum of $41.80.

From this decree, Mrs. Swift appealed to the Appellate Court, and the decree of the circuit court was there affirmed, and from that decision she appeals to this court.

It is insisted by appellee that the writings forwarded to his wife by Clark Swift, from California, do not constitute an assignment,—a present transfer of his interest in the certificate of membership, and of the rights which might arise thereunder. They were evidently drawn by an illiterate man, not familiar with the forms of legal instruments; and, while some of the phrases used would seem to indicate that he regarded one of the instruments as a will, yet, upon the whole, we think that they contain the elements of an assignment. In other words, that he intended by those writings to offer to his wife to make the contract that if she would pay the assessment due and to become due, she should be entitled to the insurance money to arise in case of his death. He says: "I do this day make my life policy of the Conductors' Life and Benefit Association read for the benefit of Mrs. M. A. Swift, my wife, in case of my death, and for her special benefit, all that may be derived therefrom."

Had he made a contract with this association by which they had taken up his certificate of membership, and had made a regulation which should make the money under the contract payable absolutely to his two daughters in case of his death, there can be no doubt that Clark Swift's interest in this contract, and his control over it, was such that he might, with the consent of the corporation, have surrendered this certificate, and have rescinded the contract, and might have made another. He evidently supposed that, by his own solemn declaration, he could place that certificate in the same condition in which it would be if it read upon its face that it was taken for the benefit of his wife, Mrs. M. A. Swift. Thus, in his letter dated the day before, which must be regarded as part of the same transaction, he says: "The enclosed note" (referring, no doubt, to the document spoken of above) "makes the policy yours, if you wish to keep it up." The con-

tract between Mr. Swift and the association, growing out of his membership and the clauses of their articles of association, required him to pay certain dues periodically, and, in consideration thereof, the association was to pay to him certain specified amounts, in case of injury to his person, and certain other specified amounts, in case of his death, to his widow; and, in want of a widow, to his children, in absence of a will. But, in case of a will, to such person or persons as should be designated in his will.

He was unable to pay the dues, and was liable to lose his membership. He writes to his wife, and says to her, if you will take this policy and pay the dues, you shall have the benefits, if any, to arise from it on account of my death, should it occur. He did not offer her the benefits to arise under the contract from personal injury, should that occur. The language of the writing dated December 11, 1877, which is relied upon as showing that this writing was meant merely for a will, wherein he says, " I make my policy read for the benefit of Mrs. M. A. Swift, *in case of my death,*" is readily understood when the dual character of the contract is kept in mind. It plainly means for the benefit of my wife, in case of my death, and for the benefit of myself in case of personal injury. It was the benefits to arise in case of death which were assigned, and it was not meant that the assignment offered was not to take effect until his death. The intention was to offer a present transfer to her of a right to such benefits as might or might not arise, and could only arise in case of his death.

This was an offer which she had a right to accept. She did accept it, and paid the dues. We are inclined to hold that these writings, in connection with the action of the wife, accomplished a transfer or assignment to his wife of all his interest in the certificate, so far as his insurance of his life was concerned.

It is strenuously insisted that this contract was of such a character that it could not be assigned, even equitably, by Clark Swift.

We think otherwise. Neither the wife nor children had any vested interest, conditional or otherwise, in this insurance money so long as Clark Swift lived and owned and controlled this contract. The contract was between the association and himself. The children paid nothing for their supposed interest. The certificate had not been delivered or sold to them. The delivery to White made him bailee for Swift. It was a contract which was capable of being rescinded by Clark Swift, with the assent of the association. It is not conceived that he had not complete control over it, to the same extent that he might have controlled a promissory note payable to him.

The will, of course, was of no effect until he died. At the time of his death, he held no interest in that part of the money to arise from the contract relating to his death, which could pass to the executor by the will. That interest had been sold. It was assignable in equity, and had been assigned, to and paid for by the wife.

The judgment of the Appellate Court must be reversed and the cause remanded.

*Judgment reversed.*

MULKEY, J.: I can not concur either in the reasoning or conclusion of the above opinion.