Garner *v.* Germania Life Ins. Co.

ANNA GARNER *et al.*, Plaintiffs, *against* THE GERMANIA LIFE INSURANCE COMPANY, Defendant.

(Decided June 25th, 1885).

Although a policy of insurance obtained by a person upon his own life, payable at his death, expressly declares the insurance to be in trust for his children named therein, if he himself keeps the policy entirely in his own possession and alone pays the premiums upon it, he may, with the assent of the insurer, surrender the policy, and in consideration of such surrender, accept a new policy payable to a different beneficiary.

EXCEPTION to the dismissal of a complaint at the trial of an action in this court, ordered to be heard in the first instance at the General Term.

The facts are stated in the opinion.

*Otto Horwitz*, for plaintiffs.—The application for and the policy must be construed together, the application forming a part of the contract (*Fitch* v. *American Popular Life Ins. Co.*, 59 N. Y. 557; *Edington* v. *Mutual Life Ins. Co.*, 67 N. Y. 185). The application is made by plaintiffs through John Lindemann, the assured. From the form of the application it affirmatively and conclusively appears that the application is made by the children; they are the applicants; the contract is for them. The contract of insurance is between the applicant and the company; and the subject matter of the contract is the life of the assured (*Ferguson* v. *Massachusetts Mutual Life Ins. Co.*, 32 Hun 306; *Glanz* v. *Gloeckler*, 15 Rep'r 334). And even if John Lindemann had acted as the agent of his children, without their authority at the time he applied for the insurance as their trustee, they could adopt the contract on it becoming known to them, and sue thereon (*Hutchings* v. *Miner*, 46 N. Y. 456; *Thompson* v. *American Tontine Life Ins. Co.*, Id. 674; *Whitehead* v. *New York Life Ins. Co.*, 63 How. Pr. 394).

Aside from the fact that the contract is with the children, and hence cannot be altered without their consent, it is made for their benefit, and is inalienable without their consent (*Thompson* v. *American Tontine Life Ins. Co.*, 46 N. Y. 674; *Fowler* v. *Butterly*, 78 N. Y. 68; *Fitch* v. *American Popular Life Ins. Co.*, 59 N. Y. 557; *Greeno* v. *Greeno*, 23 Hun 478; *Ruppert* v. *Union Mutual Ins. Co.*, 7 Robt. 155; *Valley Mutual Life Ins. Co.* v. *Burke*, 7 Virg. L. J. 173; *Gosling* v. *Caldwell* [Tenn.], 27 Am. Rep. 774).

The policy remained in full force and effect up to the time of the death of the insured, as the policy issued in lieu of it was in full force and effect, and must be deemed a continuation thereof (*Barry* v. *Brune*, 8 Hun 395; affirmed 71 N. Y. 261).

The law of 1840, which applies to married women, is a protective law, and should be liberally construed. While the law provides that a married woman may insure her husband's life for her sole benefit, it has been held that a policy obtained by her husband for her benefit and that of their children, is within the spirit of the act, and hence cannot be dealt with by the husband (*Barry* v. *Equitable Life Ins. Co.*, 59 N. Y. 587; *Eadie* v. *Slimmon*, 26 N. Y. 9; *Whitehead* v. *New York Life Ins. Co.*, 63 How. Pr. 394).

*Edward Salomon*, for defendant.—The policy lapsed and became null and void by non-payment of premium on the 24th day of September, 1878. Whatever reasons John Lindemann may have had for allowing the policy to lapse cannot alter the legal effect of the non-payment of premium. He was under no legal obligation to pay that premium, and after its non-payment, the defendant ceased to be under any legal obligation to pay anything on the policy, or to take its past existence into consideration in any subsequent dealing with Lindemann or anybody else. Even upon the supposition that the beneficiaries had a vested interest in the policy, that interest was still subject to destruction by the omission of their father to pay the premium, even if such omission was deliberately planned.

Assuming that the beneficiaries had a vested right, it was destroyed by the forfeiture of the policy, unless the defendant fraudulently conspired with John Lindemann to bring about such forfeiture for the purpose of destroying such vested rights.    There was no evidence whatever in the case from which the jury could have been warranted to infer the existence of such fraud or conspiracy.

Assuming that the beneficiaries had a vested right in the policy and that John Lindemann wrongfully caused its forfeiture, it may be that such vested right attached to the new policy in equity, so that the plaintiffs, either by proper steps before payment of the new policy, or subsequently by suit against the payee thereof, might enforce it; but after payment of the new policy by the defendant in good faith, without notice or knowledge of the plaintiffs' claim, it cannot be subjected to the penalty of a second payment.

The children of John Lindemann had no vested rights in the old policy when it was surrendered by him. First, if there was a trust in this policy, it was executory and revocable in its nature (2 Kent's Com. 438, 439, 440; *Autrobas* v. *Smith*, 12 Vesey 39; *Pennington* v. *Gittings*, 2 Gill. & J. 208; *Jervoise* v. *Duke of Northumberland*, 1 Jac. & Walk. 559, 571; *Stone* v. *Hackett*, 12 Gray [78 Mass.] 227; *Martin* v. *Funk*, 75 N. Y. 134; *Willis* v. *Smyth*, 91 N. Y. 297; *Mabie* v. *Bailey*, 95 N. Y. 206). Second, a wife's policy under chapter 80, Laws of 1840, and the subsequent amendatory legislation, creates vested rights in the beneficiaries by express provision of law; for which reason the following decisions have no bearing upon the questions involved in this case : *Ruppert* v. *Union Mutual Ins. Co.* (7 Robt. 155); *Fraternal Mutual Life Ins. Co.* v. *Applegate* (7 Ohio St. 292); *Chapin* v. *Fellows* (36 Conn. 132); *Whitehead* v. *New York Life Ins. Co.* (63 How. Pr. 394); *Fowler* v. *Butterly* (78 N. Y. 68); *Barry* v. *Brune* (71 N. Y. 261). Third, a careful search for and examination of decided cases has failed to disclose a single one in favor of the plaintiffs, while there are quite a number, rendered by high and reputable tribunals, directly in favor of the defendant's position (cit-

ing *Clark* v. *Durand*, 12 Wis. 223, upheld and followed in *Kerman* v. *Howard*, 23 Wis. 108, and *Foster* v. *Gile*, 50 Wis. 603; *Lemon* v. *Phœnix Mutual Life Ins. Co.*, 38 Conn. 294; *Bickerton* v. *Jaques*, 12 Abb. N. C. 25; *Gambs* v. *Covenant Mutual Life Ins. Co.*, 50 Mo. 44; *Swift* v. *Railway Passenger &c. Assoc.*, 96 Ill. 309; *Landrum* v. *Knowles*, 22 N. J. Eq. 594; *Pilcher* v. *New York Life Ins. Co.*, 33 La. Ann. 332; *Ricker* v. *Charter Oak Life Ins. Co.*, 27 Minn. 193; *Union Mutual Life Ins. Co.* v. *Stevens*, 19 Fed. Rep'r 671).

CHARLES P. DALY, Chief Justice.—The facts of this case are as follows: On the 24th of September, 1863, John Lindemann obtained from the defendants a policy upon his life to the amount of $3,000, upon the payment of an annual premium of $89.34, which insurance was declared to be in trust for his children—Johan Lindemann, Emilia Lindemann and Anna Lindemann, the children of a former wife—he being at the time of this insurance married to a second wife. He kept the policy himself. Twice during his life he gave it to one of the children to take it to the defendants' office and pay the premium, who, after doing so, returned it to her father, who kept it in his desk in his store. The testimony is that he told her to go to the life insurance company and say to them: "Mr. Lindemann, your father, sent you to pay this policy." She assumed the policy to be a paper which he gave her that she did not open. She said that her father was sick, and that he told her that it was the children's policy; that he said: "I feel very bad, and I don't think I will live another year." She testified that he was always telling the children they would have it; and that they would say: "Well, papa, we have a stepmother;" and that he would say: "I have saved for you. My life is insured in the Germania Life Insurance Company." That this was said the last time that she went to pay the premium, which she declared to be in 1878, and that he then said "I send you down with this; I have to pay it for your benefit," giving her a paper which she did not look into, but handed in at the window of the insurance company, which was

handed back to her and which she returned to her father, and supposed was the policy. She testified that he died a year afterwards, and that just before he died he said: "Annie, I may not live to pay another policy." She was mistaken as to having made this payment in 1878 ; for the premium due on the 24th of September of that year was not paid, and the company gave Lindemann the notice which is required by statute (L. 1877 c. 321 p. 342), that unless it should be paid within thirty days thereafter the policy and all payments under it would become forfeited and void. The premium was not paid, at least as a premium under that policy, but within the thirty days, that is on the 28th of September, 1878, four days after the premium was due, Lindemann, with the consent of the company, surrendered the policy and took out a new one payable to his wife, in which it was declared, first, that it was issued by the defendants in consideration of the representations made to them in the application for it; second, that $1,429.44 was paid on the delivery of it by Louise Lindemann, the wife of John Lindemann ; third, upon the further consideration of the payment annually of $89.34, on or before the 24th of September of each and every year. The policy declared that upon these considerations the company insured the life of John Lindemann in the sum of $3,000 for the sole use of his wife Louise Lindemann.

It appears that a dividend to Lindemann of $20.70 became due on the 24th of September, 1878, on the first policy; that there was a receipt of the payment of this dividend, signed by Lindemann, which bore date the 26th of September, 1878, two days after the dividend was due ; and two days before the date of the new policy.

. Doremus, the secretary of the company, testified that he would not say that this dividend was not applied in part payment of the premium that was paid at that time on the new policy for the benefit of Mrs. Lindemann. He said that the dividend was paid on the same day that the new policy was issued by them; and that he had no doubt that this dividend formed part and parcel of the payment of the

premium on that policy, which was issued upon the surrender of the former one. He testified that the books showed that this dividend was paid at the same time that the premium was paid; and further, that when the former policy was surrendered it was cancelled by striking out the signatures of the officers. That before he signed the new policy he had it before him, lying on his desk, for some time on the day upon which it was issued.

There is some discrepancy arising from the difference in the dates of the receipt for the dividend and of the new policy, and the point is taken by the plaintiffs that, as it appears by the evidence that the premium was paid at the same time that the dividend was received, and the new policy bears date two days after the date of the receipt for the payment of the dividend, it follows that the premium on the old policy was paid before the new policy was issued; and as Lindemann died before the next premium became payable, that the beneficiaries under the old policy were entitled to the insurance. But this discrepancy is not material, for assuming the fact to be that the premium $89.34 was paid two days before the issuing of the new policy, it would not, in the view I shall take of the law, affect the case, the first policy having been surrendered up and cancelled.

In issuing the new policy, all the premiums paid upon the former one, amounting, as has been stated, to $1,429.44, were allowed as part of the consideration for the issuing of the new policy, which was upon the same terms as the former one, namely, the payment thereafter of an annual premium of $89.34. Lindemann was then fifteen years older, when the premium would ordinarily be higher, and the secretary of the company testified that the new policy would not have been issued upon the terms that it was, unless the former policy had preceded it, had been in existence, and had been surrendered.

On the death of Lindemann, which occurred, as has been said, before the second premium became due upon the new policy, the company paid the $3,000, the amount of the

insurance, to Mrs. Lindemann. Upon the assumption that it was wrongfully paid to her, the present action was brought by the beneficiaries under the old policy to recover it from the defendants, and upon the facts above stated the complaint was dismissed, from which the plaintiffs appeal.

. I do not see upon what ground this action could be maintained. Lindemann effected the insurance for the benefit of his children, and whatever interest they may have had in it, the existence of that interest or the continuance of it depended upon the payment of the annual premium, which on his part was a voluntary act, he being under no legal obligation to continue the payment of it ( *Clark* v. *Durand*, 12 Wis. 223 ; *Gambs* v. *Covenant Mutual Life Ins. Co.*, 50 Mo. 44 ; *Swift* v. *Railway Passengers &c. Assoc.*, 96 Ill. 309 ; *Landrum* v. *Knowles*, 22 N. J. Eq. 594).

If, after he had taken out the first policy, he had delivered the instrument to the beneficiaries, or to any one of them, or to any one to hold in trust for them, it would, according to certain decisions, have vested in them the right to the insurance, although he should afterwards, with the consent of the company, take out a new policy, for the same amount and at the same premium, for the benefit of some one else (*Lemon* v. *Phœnix Life Ins. Co.*, 38 Conn. 294 ; *Ricker* v. *Charter Oak Life Ins. Co.*, 27 Minn. 193 ; *Pilcher* v. *New York Life Ins. Co.*, 33 La. Ann. 332).

Whether these cases were correctly decided or not— which has been questioned, or at least as respects two of them ( *Union Mutual Life Ins. Co.* v. *Stevens*, 19 Fed. Rep'r 671)—it is not material here to inquire, as Lindemann never parted with the policy, but kept it in his possession until it was surrendered to the company and the new policy taken out ; showing by this circumstance and by the fact that he, and not the beneficiaries, paid all the premiums, that he did not, as was said under like circumstances in *Bickerton* v. *Jaques* (12 Abb. N. C. 25), intend to place the insurance irretrievably beyond his own control ; and the fact that the person who has obtained an insurance upon his life for the benefit of children or others, keeps the instrument himself,

and alone pays the premiums, has in other cases been regarded as sufficient to show that the beneficiaries, under such circumstances, have no vested rights in the policy, and that the insurer has the right to surrender it, and, if he thinks proper, to take out a new one payable to other beneficiaries (*Union Mutual Life Ins. Co.* v. *Stevens*, 19 Fed. Rep'r 671; *Clark* v. *Durand*, 12 Wis. 223; *Herman* v. *Howard*, 23 Wis. 108; *Foster* v. *Gillett*, 50 Wis. 603; *Gambs* v. *Covenant Mutual Life Ins. Co.*, 50 Mo. 44; *Sanford* v. *Sanford*, 45 N. Y. 723, 726).

There is no reason why this should not be so. The creating of such an insurance for the benefit of children or others is a mere gratuity; for although there is a duty upon parents to maintain children during their minority, this is a provision to take effect for their benefit after the parents' death.

There may be many reasons why the right to transfer such an insurance from one beneficiary to another, even in the case of children, should exist. In the course of years their pecuniary condition may be materially improved, by marriage, success in business, or other causes; so that it may be more desirable and just that others who have claims upon the insurer, and who are in greater need, should have the benefit of the sum secured by the insurance, instead of those for whom it was originally intended. When, therefore, the insurer keeps the policy entirely in his own possession, he alone paying the premiums, he should, with the consent of the insurance company, have the same right to revoke, alter or change, that he would have in respect to a will; for, like the provisions in a will, it is a gift that is to take effect upon his death. He may, of course, put an end to it by ceasing to pay the annual premium; but there is no reason why his right should be limited to this, and that where, for reasons satisfactory to him, he desires to transfer the benefit of it to another, he should have to lose all the premiums he may have paid over a long course of years, and be compelled to pay for a new policy the increased premium consequent upon his increase of years.

An insurance taken out and kept in this way is distinguishable from what has been held in cases where a wife, under the act of 1840 and subsequent acts (L. 1840 c. 80 p. 59), causes the life of her husband to be insured for her sole use, either for a definite period or for the term of his natural life, and in case of her death before the decease of her husband, makes the amount of the insurance payable to her children. It has been held that such an insurance, within the intent of the statute, is so exclusively for the benefit of the wife and children that she cannot even assign her interest in it, nor traffic with it in any way (*Barry* v. *Equitable Life Ass. Soc.*, 59 N. Y. 592, 593 ; *Eadie* v. *Slimmon*, 26 N. Y. 9) ; and also that the surrender of such a policy by the husband after the death of the wife, with the assent of the company, is absolutely void ; and that, notwithstanding such a surrender, the policy may be enforced against the company for the benefit of the children (*Whitehead* v. *New York Life Ins. Co.*, 63 How. Pr. 394) ; and that where the payment of the annual premium is allowed by a collusive arrangement between the husband and the company to lapse, so that a new policy may be taken out upon the same terms as the former one, for the benefit of the husband's creditor, that such a transaction is also void ; and upon the death of the husband, that the insurance is payable to the wife, and not to the creditor of the husband, under the new policy.

These cases I say are distinguishable, because, by the operation of the statute, the insurance is so exclusively for the benefit of the wife that neither she nor her husband can transfer it to another. Nor can that end be effected through a collusive arrangement between the husband and the company by which the payment of the annual premium is allowed to lapse. But where, in my judgment, as in the present case, the husband alone pays the premiums and keeps the policy in his possession, he may put an end to it by ceasing to pay the premiums, or if he thinks proper, surrender the policy, with the assent of the company, and convert it into a policy payable to some other beneficiary.

That is all that there is in this case.   There is nothing in the evidence showing any collusion or fraud on the part of the company.   They simply recognized the right of Lindemann, who had the policy in his own possession, and had paid the premiums upon it, to surrender it and take out a new one at the same rate of premium for the benefit of his wife, instead of the former beneficiaries ; and, in the absence of any fraud or collusion, there is no ground that I can see for holding that they were wrong in paying the amount of the insurance to the widow, upon the new policy, and should be compelled to pay it to the children, under the old one.

The judgment dismissing the complaint should, in my opinion, therefore, be affirmed.

ALLEN, J., concurred.

Exception to dismissal of complaint overruled.