# Stoelker *v.* Thornton.

*Bill in Equity for Account, by Distributees against Executor.*

| 88 | 241 |
| 108 | 636 |
| 88 | 241 |
| 112 | 588 |
| 88 | 241 |
| 129 | 607 |

1. *Benefit certificate in benevolent society, in nature of policy of life insurance; sale or assignment of.*—A benefiit certificate in a mutual benevolent society, such as the *Knights of Pythias*, or the *Ancient Order of United Workmen*, is in the nature of a policy of life insurance, and its assignment or transfer to a creditor of the beneficiary, except to the amount of his debt, is against public policy, and can not be enforced by the assignee; yet, if the assignment is not forbidden by the rules of the society, and its validity is recognized by the society, after the death of the beneficiary, by payment of the money to the assignee, the heirs or distributees of the deceased beneficiary can not impugn it.

2. *Same; testamentary bequest of.*—If the rules of the society prohibit a sale or transfer of a certificate for valuable consideration, but the certificate is made payable to "the estate of" the beneficiary, "as directed in his application, or to such other person or persons as he may subsequently direct, by will or otherwise, and entered upon the records of" the society, a testamentary bequest to a creditor is valid, though not entered on the records of the society; and the money being paid to the legatee, the heirs or distributees can not impeach the validity of the bequest, on the ground that it was an indirect attempt to give effect to a prior transfer or assignment to the legatee as a creditor, which the society had refused to recognize.

APPEAL from the City Court of Montgomery, in equity.

Heard before the Hon. THOS. M. ARRINGTON.

The bill in this case was filed on the 8th November, 1887, by Claude S. Thornton and others, as heirs at law and distributees of the estate of Charles J. Watson, deceased, against Otto Stoelker, individually, and as executor of the last will and testament of said Watson; and sought an account and distribution of certain moneys, which the defendant had received from the *Knights of Pythias*, and the *Ancient Order of United Workmen*, on benefit certificates, in the nature of insurance, issued by each of said societies to said Watson,

and which had been paid by them to the defendant. On final hearing, on pleadings and proof, the court rendered a decree in favor of the complainants, granting the relief prayed by the bill; and this decree is here assigned as error by the defendant.

TOMPKINS & TROY, for appellant.—(1.) As to the certificate issued by the Ancient Order of United Workmen, no controversy can arise. The society did not prohibit the assignment to Stoelker, but recognized its validity; and the money was paid to him after the death of Watson.—*Barton v. Prov. R. Asso.*, 63 N. H. 535; *Highland v. Highland*, 109 Ill. 366; *Mutual Benefit Asso. v. Priest*, 46 Mich. 429; *Gentry v. Supreme Lodge*, 20 C. L. J. 393; *Spann v. Chew*, 60 Texas, 532; *Holland v. Taylor*, 111 Ill. 121; *Mutual Benefit Asso. v. Burkhardt*, 110 Ind. 189; *Fiske v. Eq. Aid Union*, 11 Atl. Rep. 84; Bacon on Ben. Societies, § 306, note. That the disproportion between the amount due Stoelker at the time of the transfer, or substitution, and the amount paid on the certificate, does not affect the validity of the transaction, see *Grant v. Kline*, 115 Penn. St. 618; *Baldorff v. Fehler*, 8 Cent. Rep. 230; Bacon, B. S. § 249, and cases cited. (2.) The certificates issued by the Knights of Pythias were made payable "to the estate of the said Charles J. Watson, or to such other person or persons as he may subsequently direct by will or otherwise;" Stoelker was appointed by will, which was duly admitted to probate, and the society paid him the money. A person has an undoubted right, if possessed of legal capacity to make a will, to bequeath the proceeds of such benefit certificates as he may deem fit.— *Williams v. Carson*, 2 Tenn. Chan. R. 267; *Weil v. Tafford*, 3 *Ib.* 108; *Rison v. Wilkinson*, 3 Sneed, 565; *Tenn. Lodge v. Ladd*, 5 Lea, Tenn. 716; *Highland v. Highland*, 13 Bradw. 510, and 109 Ill. 366; *Benefit Asso. v. Priest*, 46 Mich. 429; *Clark v. Denoud*, 12 Wisc. 223; *Swift v. R. P. Asso.*, 96 Ill. 309; *Bickerton v. Jaques*, 28 Hun, 119; 50 Mo. 44; *Insurance Co. v. Stearns*, 19 Fed. Rep. 671. The probate of the will is conclusive, unless impeached by bill in equity, on the ground of fraud, undue influence, mental incapacity, or want of proper execution or attestation, none of which is alleged.—Code, § 2000; *Watson v. Bothwell*, 11 Ala. 650; Schouler on Wills, §§ 230–32, 277, 567–9; *Sherwood v. Sherwood*, 45 Wisc. 357. If the entry on the records of the society can be applied to testamentary provi-

[Stoelker v. Thornton.]

sions like this, the society might waive it; and having waived it, nobody else can complain.

WATTS & SON, *contra.*—A benefit certificate, as it is called, is in the nature of a policy of life insurance, and necessarily governed by the same rules. If payable to "the estate" of the beneficiary named, it is construed as intended for the benefit of his next of kin, or distributees; and it can not be changed, or diverted, without their consent.—*Gould v. Emerson,* 99 Mass. 154; *Rupert v. Mutual Insurance Co.,* 7 Rob. N. Y. 155; *Life Insurance Co. v. Applegate,* 7 Ohio St. 292; *Gold Life Ins. Co. v. Mobile Life Ins. Co.,* 81 Ala. 329; *Olmstead v. Ben. Society,* 37 Kans. 93; 81 Ky. 336. No principle is better settled, than that which declares illegal and void, on grounds of public policy, a policy of insurance by one person on the life of another, in which he has no insurable interest; and which forbids a creditor of the insured to acquire an interest in such policy, whether originally or by assignment, beyond the amount of his debt.—3 Kent, 462; *Helmetag v. Miller,* 76 Ala. 187; *Warnock v. Davis,* 104 N. S. 775; *Bayse v. Adams,* 81 Ky. 368; *Life Ins. Co. v. McCrum,* 36 Kans. Besides, the evidence shows that the assignment or transfer of the certificates was only intended as security for a debt; and the transaction is to be tested by the rules which apply when a deed, absolute on its face, is declared a mortgage or conditional sale.—*Crews v. Threadgill,* 35 Ala. 334; *Parish v. Gates,* 29 Ala. 262; *Turnipseed v. Cunningham,* 16 Ala. 501; *Locke v. Palmer,* 26 Ala. 312; Jones on Mortgages, vol. 1, §§ 23, 276; *Robinson v. Mobile B. & L. Asso.,* 65 Ala. 326. The money due was necessarily paid by the societies to Stoelker, because he was the executor, and represented the estate—that is, the persons interested in the estate as distributees; and after retaining the amount of his own debt, he is liable to account to these complainants for the residue. The society might waive its own rights, and pay the money in its own wrong, but such waiver can not affect the rights of the distributees.

STONE, C. J.—The present bill seeks to bring Stoelker, the executor, to a settlement of the estate of Charles J. Watson, deceased, and to have certain described funds distributed to complainants, who are next of kin to Watson. Stoelker resists the recovery, and insists that the entire funds in controversy are his property. This is five thousand dollars;

[Stoelker v. Thornton.]

two thousand of it being a benefit secured to Watson in a benevolent society, known as the "Ancient Order of United Workmen," and the other three thousand dollars being the sum of two like benefits or policies due to Watson from the society known as the "Knights of Pythias." Each of these sums was payable on the death of Watson, with certain provisos which were complied with. After the death of Watson, and the probate of the will, the two societies severally paid to Stoelker the amounts called for in the policies. Stoelker was the only creditor, and his claim, exclusive of the funeral and administration expenses, was a little less than one thousand dollars.

The one certificate declared, that Watson was "entitled to all the rights and privileges of membership in 'Ancient Order of United Workmen,' and to participate in the beneficiary fund of the order to the amount of two thousand dollars," payable to his estate at his death, with conditions, which, as we have said, we need not state here. The other two certificates, or policies, aggregating three thousand dollars, were issued by the society, or order, known as the "Knights of Pythias." These also had conditions not necessary to be noticed here. They severally secured the sums of one and two thousand dollars, to be paid "to the estate of the said Charles J. Watson, as directed by said brother in his application, or to such other person or persons as he may subsequently direct by will or otherwise, and entered upon the records of the Supreme Master of the Exchequer, upon due notice and proof of death, and good standing in the rank at the time of the death." These several certificates or policies were issued in 1880, and by their terms, and by the rules of said societies, the member holding them was bound to make certain payments when called on, as a condition of keeping them alive. It is neither averred nor shown that Watson, when he made his application for membership in the society known as "Knights of Pythias," directed or designated therein any person, to whom the benefit money was to be paid at his death; nor is it averred or shown that any direction, given by will or otherwise, was ever "entered upon the records of the Supreme Master of the Exchequer."

Until 1883 Watson paid all the calls made upon him, and kept each of said policies alive. At that time, his health having failed, and desiring to travel as a means of restoring it, he entered into the following agreement with Stoelker: He owed Stoelker over four hundred dollars, and in payment

of said indebtedness, and in consideration of other five
hundred dollars paid and agreed to be paid by Stoelker to
him, he agreed to sell said three policies, or benefit certifi-
cates, to Stoelker; he, Stoelker, assuming to pay all calls
that might thereafter be made on said policies, or benefit
certificates. Pursuant to this agreement, Watson petitioned
the two societies to have Stoelker substituted as the benefi-
ciary in each of the policies.

The society known as the "Ancient Order of United Work-
men" conformed to Watson's directions, and substituted
Stoelker as the beneficiary in the policy it had issued. The
"Knights of Pythias" had a regulation, that policies issued
by that society could not become the subject of sale for a
valuable consideration, but could pass to a beneficiary for
love and affection only. It refused to recognize the sale and
transfer to Stoelker, and refused to substitute him as the
beneficiary. In March, 1884, Watson executed his last will
and testament, and therein bequeathed to Stoelker said two
policies issued by the "Knights of Pythias," describing him
as a friend who had befriended him, and making no allusion
to the debt, nor to the transfer. It appointed Stoelker exec-
utor; and Watson dying in June afterwards, the will was
proven and established. There is no averment nor proof
that Watson was not mentally capable of making a will, nor
is there imputation of fraud or undue influence in its pro-
curement. The assault made upon it will be stated further
on. It is not charged or pretended that Stoelker did not
perform all he promised, and did not pay the five hundred
dollars to Watson, and did not meet all calls that were made
a condition on which the vitality of said policies was to be
preserved. Each society paid the amount of the policies to
Stoelker, and, as we have said, the present suit was instituted
to obtain the distribution of the fund among Watson's next
of kin. He died without lineal descendants.

The right of recovery in this case is based on the follow-
ing propositions: That the benefit certificates are, in sub-
stance, life-insurance policies on Watson's life; that a
stranger, such as Stoelker was, has no insurable interest, and
can neither sue out, nor lawfully acquire insurance on his
life, while he, Watson, was living; that, as a consequence,
the attempted sale of the policies to Stoelker in 1883 was
against public policy, and was void; and that the transaction
shows on its face that the will of 1884 was executed simply
as a means of carrying into effect the illegal agreement of

[Stoelker v. Thornton.]

sale made in 1883.    On these grounds it is contended, that
Stoelker can only claim to the extent he was a creditor of
Watson, for to that extent only had he an insurable interest.
We will first consider this case on the agreement of sale
made in 1883, and independently of the will.

It is very clear that the attempted contract of sale of the
benefit certificate issued by the society of the "Knights of
Pythias," was inoperative and void.    It was against public
policy for Stoelker to insure Watson's life, and it was equally
so for him to purchase and hold such insurance while Wat-
son was in life.    An additional reason is found in that
society's regulation, that its benefit certificates can not be
sold for a valuable consideration.    So, if this controversy
rested alone on the agreement of 1883, not recognized as
valid by the "Knights of Pythias," Stoelker had no valid
claim which he could have asserted against that society.
*Ruse v. Mut. Benefit Ins. Co.*, 23 N. Y. 516; *Stevens v.
Warren*, 101 Mass. 564; *Franklin Ins. Co. v. Hazzard*,
41 Ind. 116; *People, ex rel. v. The Golden Rule*, 114 Ill. 34;
*Mo. Val. Life Ins. Co. v. Sturges*, 18 Kans. 93; *Same v.
McCrum*, 36 *Ib.* 146; *Warnock v. Davis*, 104 U. S. 775;
*Helmetag v. Miller*, 76 Ala. 183; *Ala. G. L. Ins. Co. v.
Mobile Mut. Ins. Co.*, 81 Ala. 329.

The certificate issued by the "Ancient Order of United
Workmen" stands on a different footing.    It is not shown
that that society has any regulation forbidding the transfer
of its benefit certificates for a valuable consideration.    As
matter of fact, it did recognize the validity of the sale and
conveyance made in 1883, and, in pursuance of Watson's
request, issued a new benefit certificate, in which Stoelker
was named as the beneficiary.    Now, while it may be true
that it was against public policy for Stoelker to own a
benefit certificate, or life policy, on the life of Watson while
the latter was living, that, as a mere matter of contract right,
was a question between the society and Stoelker.    The
society waived the objection, if under its rules it could object,
and having paid the money, no other mere stranger or
volunteer can gainsay its rightful payment.

Nor was there anything unconscionable or unreasonable
on the face of the transaction.    Watson was combatting
disease, and was struggling to restore his health and prolong
his life.    He was without money, and was therefore without
the means of travel, which he hoped might give him relief.
Failing to meet calls, as without money he must have

failed, the certificates and insurance would have become forfeit, and could have benefitted no one. The length of his life could not have been foreknown, and hence it could not be reasonably conjectured to what extent Stoelker would be taxed to meet the society's calls. And the contract was not of Stoelker's seeking, but was brought about at the request and solicitation of Watson. There is no merit in this feature of the present suit.

Wills are ambulatory, and have no binding effect during the life of the testator. The public policy which forbids a mere stranger, having no insurable interest, to take out or otherwise acquire insurance on the life of another, does not prevent one holding life insurance from disposing of the benefit by will. There is no wager in this, any more than there is in testamentary disposition of any other species of property.—*Rison v. Wilkerson*, 3 Sneed, 565; *Weil v. Trafford*, 3 Tenn. Ch. 108; *Williams v. Carson*, 2 *Ib.* 269; *Tennessee Lodge v. Ladd*, 5 Tenn. Rep. 716; *Highland v. Highland*, 109 Ill. 366; s. c., 13 Bradw., 510; *Catholic Ben. Asso. v. Priest*, 46 Mich. 429; *Clark v. Durand*, 12 Wis. 223; *Gambo v. Cov. Mut. Life Ins. Co.*, 50 Mo. 44; *Swift v. Benefit Asso.*, 96 Ill. 309; *Bickerton v. Jacques*, 28 Hun, 119; *Union Mut. Life Ins. Co. v. Stevens*, 19 Fed. Rep. 671.

No authority has been cited, nor can we imagine any reason, why the illegal attempt made by Watson to sell the benefit certificates to Stoelker should, *per se*, disable him from afterwards making a will, securing the same benefit. The agreement to sell was void—not because its effect was to pay a debt, but because it is against public policy that one man shall hold insurance on the life of another, in whose life he has no insurable interest, and the regulations of the society made it unlawful to traffic in its benefit certificates. Neither of these objections can be urged against testamentary disposition. None of the ordinary grounds of contest are urged against the validity of Mr. Watson's will, such as want of mental capacity, undue influence, fraud in its procurement, &c. Stripped to its nakedness, the sole objection is, that Watson owed Stoelker money, felt grateful to him for his kindness and indulgence, and bequeathed his property to him, a stranger, to the exclusion of his blood relations. Have we authority to set aside a will on this account? In *Sherrod v. Sherrod*, 38 Ala. 537, 563, is this language: "A testator may give no reasons, or very foolish reasons, for his acts; yet, if he have testamentary capacity, his will must

[Stoelker v. Thornton.]

be carried into effect." And in *Manigault v. Deas*, 1 Bailey Eq. 302, speaking of the capacity of a testator, it was said: "If he will, he may indulge his partialities and prejudices, and exercise wisdom or folly in the disposition of his estate." We should be reluctant to hold that a will prompted by no known motive would be valid, while if it was the result, in whole or in part, of a sense of a pecuniary obligation, that alone would require us to set it aside. The void attempt to sell the benefit certificates did not disable Watson to execute the will. He unquestionably had capacity to bequeath his property to any other stranger. He had equal capacity to bequeath it to Stoelker.

The benefit certificates provide, that their several sums be paid "to the estate of the said Charles J. Watson, as directed by said brother in his application, or to such other person or persons as he may subsequently direct, by will or otherwise, and entered upon the records of the Supreme Master of Exchequer." It is contended, that because Watson's testamentary direction is not shown to have been "entered upon the record of the Supreme Master of the Exchequer," Stoelker can claim no right under the will.

It is difficult to see how this requirement can be complied with, if intended to be applicable to testamentary direction. As wills take effect only at the death of the testator, it would seem that no time is allowed for entering the direction on the "record of the Supreme Master of Exchequer." But we need not decide this question. If there is any thing in it, and we think there is not, only the society could object to its omission, and it has not done so. It has acknowledged its liability, and paid the money. The complainants show no right to the money sued for.

The decree of the chancellor is reversed, and the cause remanded, that the chancellor may make proper orders in the premises.

Reversed and remanded.

Clopton, J., not sitting.