(84 South. 761)

HAASE et al. v. FIRST NAT. BANK OF AN-
NISTON.   (7 Div. 23.)

(Supreme Court of Alabama.  Nov. 13, 1919.
Rehearing ·Denied Jan. 29, 1920.)·

1. CONTRACTS ☞101(2) — CONTRACT VALID
WHERE MADE MAY BE HELD VOID AS AGAINST
PUBLIC POLICY IN STATE WHERE ENFORCE-
MENT IS SOUGHT.

A contract entered into in one state is not
contrary to the public policy of another state
to the extent that comity will not be extended
to it merely because it is forbidden in latter
state, and is not void in latter state unless pro-
hibited by the statutes, or unless there is about
it something inherently bad, something shocking
to one's sense of right as measured by moral
standards, in the judgment of the courts, or
something pernicious and injurious to the public
welfare.

2. INSURANCE ☞122—ASSIGNMENT OF LIFE
POLICY TO PERSON HAVING NO INSURABLE IN-
TEREST HELD VALID.

Assignment of paid-up life policy to person
having no insurable interest held valid in view
of validity thereof under laws of state in which
it was made.

3. INTERPLEADER ☞10—INSURER BY INTER-
PLEADER AND PAYMENT INTO COURT WAIVED
DEFENSES.

Insurer by paying amount of insurance into
court and instituting bill of interpleader to have
ownership of policy determined accepted as set-
tled against itself all possible questions that
might have arisen out of the policy as a mere
matter of contract.

4. INSURANCE ☞200—ASSIGNMENT GOVERNED
BY LAWS OF STATE WHERE EXECUTED AND
WHERE ASSIGNOR RESIDES.

Where assignment of life policy was exe-
cuted in state in which assignor lived, the ef-
fect and validity of assignment will be measured
by the laws of such state.

5. INSURANCE ☞122—ASSIGNMENT BY AS-
SIGNEE WITHOUT INSURABLE INTEREST TO AN-
OTHER WITHOUT SUCH INTEREST HELD VALID.

Where assignment of paid-up life policy to
person having no insurable interest was valid
by reason of comity because valid under laws
of state in which assignment was made, as-
signee's assignment to a bank having no in-
surable interest, as security for payment of
loan, was valid; there being no special circum-
stances making the assignment to the bank
more against public policy than original assign-
ment to assignee.

Appeal from Circuit Court, Calhoun Coun-
ty; Hugh D. Merrill, Judge.

Bill by the Mutual Life Insurance Com-
pany of New York against the First National
Bank of Anniston, Charles J. Haase, executor
of the estate of Julius Saarbach, and Charles
Wurtzburger and wife. From the decree ren-
dered, defendant First National Bank of An-

niston and defendant Charles J. Haase ap-
peal. Affirmed.

Each of the respondents answered. The
bank claimed under its assignment from
Wurtzburger and the proceedings it had tak-
en to enforce its lien under the assignment on
the policy. Wurtzburger having died pending
the suit an administrator ad litem answer-
ed that Wurtzburger claimed no interest in
the policy, having no interest in the life of
the insured, and that the proceeds of the pol-
icy properly belonged to the estate of Juli-
us Saarbach. Saarbach's executor answered,
claiming the proceeds of the policy and set-
ting up that both transfers were void. The
chancellor decreed that the funds arising
from the policy were the property of the
First National Bank.

Weakly & Rice, of Birmingham, for appel-
lant. The bank was not entitled to the pro-
ceeds of the policy, because Saarbach. owed
it nothing, and it had no insurable. interest.
76 Ala. 183; 81 Ala. 397, 2 South. 24; 88 Ala.
241, 6 South. 680, 6 L. R. A. 140; 145 Ala.
280, 39 South. 713; 112 Ala. 584, 20 South.
959; 129 ·Ala. 602, 29 South. 779; 108 Ala.
624, 18 South. 489.

Knox, Acker, Dickson & Sterne, of Annis-
ton, for appellee. The policy was valid in
its inception, and not taken out for the pur-
pose of evading the rule against wagers, and
hence may be assigned to any person, with-
out regard to the interests of the assignee.
222 U. S. 148, 32 Sup. Ct. 60, 56 L. Ed. 131;
Joyce on Insurance, §§ 918, 919. The as-
signment from Saarbach to Wurtzburger is
a New York contract or a Tennessee con-
tract, and, being valid under the law of ei-
ther state, it is valid in Alabama. 112 Ala.
514, 21 South. 711, 57 Am. St. Rep. 45; 119
Ala. 544, 24 South. 552, 43 L. R. A. 385, 72
Am. St. Rep. 936; 137 Ala. 119, 33 South.
934, 62 L. R. A. 33, 97 Am. St. Rep. 19; 198
Ala. 47, 73 South. 409; 13 Corpus Juris, 253
et seq. The contract was executed, and the
courts will not interfere with the rights ac-
quired thereunder. 1 Ala. 449; 46 Ala. 282;
73 Ala. 200; 76 Ala. 251; 180 Ala. 590, 61
South. 373; 201 Ala. 275, 78 South. 51, L. R.
A. 1918D, 939; 198 Ala. 47, 73 South. 412,
194 Ala. 474, 69 South. 934; 87 Ala. 92, 6
South. 378.

SAYRE, J. In 1871 Julius Saarbach pro-
cured a policy of insurance on his own life in
the sum of $1,000, payable at his death to his
executors, administrators, or assigns, for
which he paid and was to pay a single premi-
um of $403.75. In August, 1887, on a recited
consideration of $1 and other valuable consid-
erations, the insured assigned this policy to
his son-in-law, Charles H. Wurtzburger. In

1890 Wurtzburger assigned the policy to appellee bank, in fact to secure a note of $1,000, but this, as well as the assignment to Wurtzburger, was absolute in form. In 1894, Wurtzburger having failed to pay, appellee, proceeding under the statute in such cases made and provided, foreclosed its lien on the policy and became the purchaser thereof. In 1911 Saarbach died, appellee brought its action at law, and, the personal representatives of both Saarbach and Wurtzburger laying claim to the policy, the insurance company filed this its bill of interpleader to have determined the ownership of the policy, worth at that time $2,044.53.

We have a line of cases which hold—and in this state there is nothing to the contrary —that an assignment like that to Wurtzburger, who had no insurable interest in the life of Saarbach (27 Cyc. 704), is obnoxious to public policy as constituting a wager contract. Helmetag v. Miller, 76 Ala. 183, 52 Am. Rep. 316; Ala. Gold Life Ins. Co. v. Mobile Mutual Ins. Co., 81 Ala. 329, 1 South. 561; Stoelker v. Thornton, 88 Ala. 241, 6 South. 680, 6 L. R. A. 140; Sands v. Hammell, 108 Ala. 624, 18 South. 489; Spies v. Stikes, 112 Ala. 584, 20 South. 959; Culver v. Guyer, 129 Ala. 602, 29 South. 779; Troy v. London, 145 Ala. 280, 39 South. 713. For a summary of the conflicting decisions on this subject in other jurisdictions, see 2 Joyce on Insurance (2d Ed.) § 919. These cases at their source in this state (Helmetag v. Miller) were based in part on Stevens v. Warren, 101 Mass. 564. But in Mutual Life Insurance Co. v. Allen, 138 Mass. 24, 52 Am. Rep. 245, decided in the same year with Helmetag v. Miller, and evidently not before this court in Helmetag v. Miller, it was said that the case of Stevens v. Warren, in so far as it had been supposed to hold that an assignment of the right of the insured in a life policy to one who has no interest in the life was void, without regard to the circumstances and character of the particular transaction, had been misunderstood, and that court, after reviewing the cases cited by this court in support of its decision, came to the conclusion that there was nothing in a contract of life insurance which would prevent the insured from selling his right under the contract for his own advantage, and that an assignment made by the insured in good faith for the purpose of obtaining the present value of his policy, and not as a gaming risk between him and the assignee, passed the equitable interest of the assignor. We are now asked to review our cases, but do not find that to be necessary, and will not consider whether they should be further followed.

The assignment to Wurtzburger was executed and delivered in the state of New York, where Saarbach lived at the time, or possibly in the state of Tennessee, of which state Wurtzburger was then a citizen and resident, and by the law of those states alike, competently proved at the hearing (Cubbedge v. Napier, 62 Ala. 518), such assignment was valid, and, for aught appearing, conferred a perfect title upon the assignee (Steinbach v. Diepenbrock, 158 N. Y. 24, 52 N. E. 662, 44 L. R. A. 417, 70 Am. St. Rep. 424; Clement v. Insurance Co., 101 Tenn. 22, 46 S. W. 561, 42 L. R. A. 247, 70 Am. St. Rep. 650). In Afro-American Life Ins. Co. v. Adams, 195 Ala. 147, 70 South. 119, in Barnett v. United Brothers, etc., 10 Ala. App. 382, 64 South. 518, and in American National Ins. Co. v. Moore, 14 Ala. App. 413, 70 South. 190—the last two being referred to in the briefs—it was held that the public policy which forbids a mere stranger, having no insurable interest in the life of the insured, to take out or otherwise acquire insurance on the life of another, does not prevent one who procures and retains insurance on his own life from making the benefit payable to another, without regard to whether the latter has an insurable interest; but those cases did not involve the precise point now at issue, and need not be further considered. The cases generally hold that the assignment of a life policy is governed by the law of the place where the assignment is made (25 Cyc. 780, 781), and our predecessors seem to have held that contracts which may in a general way be classed with the contract in question as interpreted in the line of cases to which we have referred—that is, contracts for the sale of "futures"—if legal where made, would be enforced in this state (Hawley v. Bibb, 69 Ala. 52; Peet v. Hatcher, 112 Ala. 514, 21 South. 711, 57 Am. St. Rep. 45). These cases were decided prior to the enactment of section 3345 of the Code of 1907, which provides that future contracts shall not be enforced in the courts of this state.

[1, 2] Bearing in mind that there is nothing in this record going to show that the assignment by which Wurtzburger acquired the policy on the life of Saarbach was in fact affected by any vicious quality, but that Haase seeks to bring it into disfavor with the court, contrary to the rule of the courts in a majority of the states, for the sole reason that, according to the rule now prevailing in this state, one collateral effect of such assignments in general is to afford a temptation to the commission of crime—bearing these considerations in mind, we may close this branch of the case by referring to the fact that a contract is not contrary to the public policy of a state to the extent that comity will not be extended to it merely because it is forbidden in the place of the forum. Falls v. U. S. Savings Co., 97 Ala. 417, 13 South. 25, 24 L. R. A. 174, 38 Am. St. Rep. 194. To have that vitiating effect, the contract must be prohibited by the statute law, or there must be "something inherently bad about it, something

shocking to one's sense of right as measured by moral standards, in the judgment of the courts, something pernicious and injurious to the public welfare." International Harvester Co. v. McAdam, 142 Wis. 114, 124 N. W. 1042, 26 L. R. A. (N. S.) 774, 20 Ann. Cas. 614; Milliken v. Pratt, 125 Mass. 374, 28 Am. Rep. 241. Interesting applications of this principle are shown by the opinions in the cases supra. Our judgment, in view of the authorities to which we have referred, is that the contract by which the policy in this case was assigned to Wurtzburger should be recognized and enforced in the courts of this state.

It is said in the brief for appellant that—

"Under the case of Alabama Gold Insurance Co. v. Mobile Mutual Ins. Co., 81 Ala. 329, 1 South. 561, the Anniston bank, if it had continued its suit directly against the Mutual Life Insurance Company of New York [which filed the bill of interpleader in this cause], could not have recovered without proof that it had an insurable interest, and that the assignment was valid, and this it could not prove, because it has utterly failed to prove or even to claim that it had any such insurable interest in this case."

[3-5] This argument fails to meet the issue involved on this appeal. The question here and now is not whether the contract of insurance could be enforced by Wurtzburger or appellee against the insurance company, for that contract, so far as it concerns the company, has been fully executed by the payment of the amount of the insurance into court. By that payment and its bill of interpleader the insurance company has accepted as settled against itself all possible questions that might have arisen out of the policy as a mere matter of contract. Stoelker v. Thornton, 88 Ala. 241, 6 South. 680, 6 L. R. A. 140. And in view of the determination, already stated, as between Saarbach's executor and Saarbach's assignee, the question now is whether, as between appellee and its assignor, the contract of assignment by which appellee acquired the policy shall be enforced. At the time of Wurtzburger's assignment to appellee, the assignor lived in this state, and in this state that assignment was executed and delivered. Its validity and effect are therefore to be measured by the law of this state, and the question at issue on this branch of the case may be thus stated: Was the assignment to appellee in itself illegal as a wagering contract? In Helmetag v. Miller this court held that the assignment by the insured of a policy payable to his executors, administrators, or assigns, as collateral security for a loan of money, created in the assignee an insurable interest in the life of the insured to the extent of the debt secured which the court of equity would protect. But that is not this case, and at the point to which we have progressed, the contention, as before said, is between Wurtzburger's personal representative and his assignee. It would seem to be anomalous to say that Wurtzburger or his personal representative, claiming the policy or its proceeds by assignment from Saarbach, though having no insurable interest in Saarbach's life, should be heard to deny the validity of his own assignment, similar in all respects to that by which Wurtzburger took except that the assignment to appellee was made on consideration of a loan of money presently negotiated. And the fact is that Wurtzburger's assignment to appellee was fairly made and must be accepted as a bona fide pledge, afterwards foreclosed, of Wurtzburger's interest in the policy. No reason appears why Wurtzburger, himself having no insurable interest in the life of Saarbach, should, in his disposition of the policy, be limited to those only having an interest. The alleged public policy on which the court proceeded to judgment in Helmetag v. Miller could not be served by such a limitation. If only the general tendency of such transactions is to be considered, there is no reason for classification among assignees having no insurable interest; there is no reason for supposing that the temptation to kill the insured will press more heavily upon an assignee for value than upon a volunteer, both being without insurable interest. If the circumstances of the particular case are to be considered, there is nothing to indicate that appellee corporation was or is more prone to murder than a son-in-law in need of money. Conceding, therefore, in deference to the decision in Helmetag v. Miller, that the right to a sum of money payable on the death of a person under a contract in the form of an insurance policy has a special character or quality which renders it less assignable than the right to a sum payable at the death of the same person under any other contract or assurance, or than a remainder in real estate expectant on such death (Mutual Life v. Allen, supra), we are yet of the opinion that in the particular circumstances here exhibited the public policy which is supposed to produce that special character or quality has no field of operation, and that the assignment to appellee should be sustained.

Affirmed.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.