155 So. 582

**METCALF v. MONTGOMERY, Superintendent of Banks, et al.**

**4 Div. 694.**

Supreme Court of Alabama.

May 10, 1934.

Rehearing Denied June 28, 1934.

Foster C. Beck and J. C. Yarbrough, both of Enterprise, for appellant.

M. A. Owen and J. C. Fleming, both of Elba, and M. S. Carmichael, of Montgomery, for appellees.

158

FOSTER, Justice.

In 1926, the Equitable Life Assurance Society of New York insured the life of complainant in the sum of $5,000 by issuing two policies, each for $2,500. They provide that if insured before he reaches the age of 60 should become totally and presumably permanently disabled, the company thereby waived payment of subsequent premiums and became obligated to pay to him a disability income, aggregating $50 per month, during the continuance of such disability. The death benefits were payable to his personal representatives.

At that time insured was indebted to the Bank of New Brockton in a large sum, to secure which he had executed a second mortgage on a valuable farm and his live stock, and other personal property. The insurance was taken out with the consent of the bank president. The bank paid the first premium for him, for which he executed his note and left the policies with it.

■■■■ While there is some conflict in the evidence as to the purpose for which they were left, we think that it satisfactorily shows that they were left as collateral security not only for the premium note, but also for the whole of his debt to the bank. There was then no assignment in writing of the policies, but a written assignment is not necessary to be effectual in equity. McDonald v. McDonald, 215 Ala. 179, 110 So. 291; First National Bank v. Murphree, 218 Ala. 221, 118 So. 404.

As a creditor of insured, and to the extent of its debt, the bank had an insurable interest in his life. Helmetag's Adm'r v. Miller, 76 Ala. 183, 52 Am. Rep. 316; Troy v. London, 145 Ala. 280, 39 So. 713; Keeble v. Jones, 187 Ala. 207, 65 So. 384. The assignment then made was valid and sufficient in equity as security for the debt.

Matters thus remained, in so far as we are here concerned, until the 25th day of April, 1928. At that time insured had become blind due to sickness. He was confined to bed preparing for an operation seeking relief from such blindness. Permanent total disability under the terms of policy was then anticipated and had been discussed, and, as later developed, had accrued. But it was thought to be dependent upon the result of the contemplated operation. The operation did not relieve him, and the company afterwards conceded that he was due to be paid the disability benefits, apparently extending from at least the middle portion of April of that year (1928), and makes no other contention now.

On the 25th of April, the president of the bank and others visited insured at his home and procured a written assignment on a blank form furnished by the insurance agent. The assignment in terms sufficiently embraced the disability benefits then due or thereafter accruing.

The purpose of this bill is, in the alternative, to cancel the assignment and have the policies restored for fraud in procuring the assignment, or to reform it so that the disability benefits will not be included. To justify its cancellation insured claims that the president of the bank represented to him that the policies should be so payable as not to require a bond by an administrator after his death to collect them, and thereby entail the cost of a surety bond; that he had such an experience which cost $50, and it could be obviated by an assignment to the bank; and that it would not affect his ownership of the policies.

■■■ The president of the bank being dead when the testimony was taken, insured could not testify to the transaction. Section 7721, Code. But his wife and M. C. Russ, one of the insurance agents of the company, were among those present, and gave their version of what occurred. The testimony of the wife was, in substance, that the assignment was made for convenience, and not to pass any of the benefits of the policies. The testimony of the agent, M. C. Russ, who wrote and witnessed the assignment, tended to support the theory that the death benefits were to pass by the assignment; that the disability benefits were to be reserved to insured, but be subject to a small debt then contracted for an unpaid premium. The testimony of the bank officers and the others present tended to show that they told insured that the bank examiner had criticized them for not having an assignment in writing, and that was what they wanted. That there was no discussion of a reservation of the disability benefits, and there was no such understanding. The evi-

dence all shows that the bank agreed to and did soon afterwards advance enough to pay a premium then due, and an amount to aid in the expense of the operation. This was done on April 28th, upon the execution at the bank of a note in the name of insured by his son, by authority of insured.

The operation was performed, but his sight was not restored, and his disability is not now questioned.

The first disability check came to the bank dated July 14, 1928, for $200.38, made payable to insured and the bank. This was evidently due to the fact that the written assignment had been sent to the company. Thereupon the bank notified insured, who sent his son with authority to indorse it, pay the amount which had been advanced, and to get the balance for his benefit. This was done, and the balance of approximately $40 placed to his checking account in the bank. Each month thereafter a check for $50 came to the bank so payable, except one that was payable to insured and sent to him. When they came payable to insured and the bank, he was notified by the bank, was carried there by his wife, and indorsed the checks, and the bank paid him the cash in each and every instance with no claim of right to it, as a credit on his debt. These transactions were so conducted during the lifetime of the president, and evidently with his knowledge, and approval, and so continued until the bank failed about December 23, 1930. The bank president was then dead.

The bank went into liquidation by the state banking department, under the supervision of the circuit court, in equity, where this proceeding is pending. The liquidating agent refused to recognize the right of insured either to the policies themselves or to the disability benefits.

When $150 in checks had accrued, he allowed insured to pay $1,000 to have his personalty released, and permitted him to use in so doing some or all of the $150 benefit checks which had accumulated. The liquidating agent sold the policies on March 27, 1931, to Mrs. Anna Amos, respondent, for $1,-000 cash, and a credit allowance of $4,000 representing certain depositor's claims to that amount, and with their consent and approval, estimated to be worth approximately fifty cents on the dollar. Mrs. Amos, by virtue of such purchase, conducted by authority of section 6745, Code, now claims the policies, including both the death and disability benefits.

There is no doubt but that the president and other officers of the bank, voluntarily allowed insured to receive the disability benefits as long as the bank continued to operate. They would not ordinarily have done so, if such benefits had been assigned to it as collateral for a large debt then inadequately secured. The second mortgage on the land is conceded to be of no value. The personalty was worth approximately $1,000; the debt $9,000 to $11,000. The death benefit in the policy $5,000.

It is our view that we should give the assignment the same construction and effect which the parties themselves apparently gave to it. Since the bank president and other officers conceded the disability benefits to insured, we must conclude that they so understood the agreement. Our judgment is that though the verbal assignment to the bank at the time the policies were issued may be sufficient to carry the inchoate right to the disability benefits provided for in them as security for the debt of insured to it, and though there was then no mention made of such benefits, but after there arose the disability, the occasion for their accrual, the assignment then made in writing was not intended to embrace the disability benefits, except to reimburse the bank for advances then made to pay the premium past due, and the expense of his operation, and as a new contract it now takes precedence over the prior verbal transfer. The written assignment does not specify the debt intended to be secured by the assignment. The blank space in the form used, where the amount due is to be inserted, was filled in with the words "as interest may appear." It is proper to show by parol just what that interest was, without the necessity of a reformation. West End Sav. Bank v. Goodwin, 223 Ala. 185, 135 So. 161; Missouri State Life Ins. Co. v. Robertson Banking Co., 223 Ala. 13, 134 So. 25; 2 Joyce on Ins. (2d Ed.) § 926. Since the parties treated it as meaning that the disability benefits were assigned for the limited purpose we have mentioned, but that the death benefits were assigned to secure the full amount of the debt, and since that interpretation of the contract is supported by the evidence, and not in conflict with the language used in the assignment, we think that should be held to be its meaning, and that a reformation is not necessary.

The controversy in this case is between the insured, while he is still living, and one who claims the policy as a remote assignee. The holder of the policy, Mrs. Amos, claims by purchase from the bank in liquidation.

The bank had an insurable interest in the life of insured, and was assignee for the security of its debt. Mrs. Amos does not show an insurable interest in his life, other than by her purchase, if that is such interest. Helmetag's Adm'r v. Miller, 76 Ala. 183.

■ It has been often held in this state that an assignment of a policy of life insurance by the insured to one without an insurable interest in his life is void as against public policy. Helmetag's Adm'r v. Miller, supra; Ingram v. Johnson, 226 Ala. 68, 147 So. 172; Alabama Gold Life Ins. Co. v. Mobile Mutual Ins. Co., 81 Ala. 332, 1 So. 561; Stoelker v. Thornton, 88 Ala. 246, 6 So. 680, 6 L. R. A. 140; Behr v. Gerson, 95 Ala. 439, 11 So. 115; Sands, Adm'r, v. Hammell, 108 Ala. 626, 18 So. 489; Spies v. Stikes et al., 112 Ala. 584–588, 20 So. 959; Culver, Trustee, v. Guyer, 129 Ala. 602–607, 29 So. 779; Troy v. London, supra; Missouri State Life Ins. Co. v. Robertson Banking Co., supra.

■ Our cases are likewise uniform to the effect that an insured may cause to be named as beneficiary any person whom he may select, though the latter has no insurable interest. Afro-American Life Ins. Co. v. Adams, 195 Ala. 147, 70 So. 119; Nat. Life & Acc. Ins. Co. v. Bridgeforth, 220 Ala. 314, 124 So. 886; North Carolina Mut. Life Ins. Co. v. Martin, 223 Ala. 104, 134 So. 850; Nat. Life & Acc. Ins. Co. v. Alexander, 226 Ala. 325, 147 So. 173.

We have no disposition to consider any supposed basis for such distinction. It is now stare decisis in Alabama, and we need only refer to it in that light.

There is some confusion as to whether a second or subassignee is affected with the same disability. Our case of Haase v. First National Bank, 203 Ala. 624, 84 So. 761, did not so extend the rule provided the first assignee had a valid assignment. Our later case of Ingram v. Johnson, supra, left the question open and seemed to cast doubt on the principle so asserted.

There is also some confusion in the authorities upon the question of whether the right to question the insurable interest of an assignee is available to the assignor, and that only the insurer may do so. A denial of that right to an assignor is the effect of the holding in the Haase Case, supra, though not thus expressed. Likewise, in Stoelker v. Thornton, supra (at page 246 of 88 Ala., 6 So. 680), expressions are used which indicate the same thought. And it is so stated in 32

Corpus Juris, 1112, § 206; 37 Corpus Juris, 398.

But other cases in Alabama apply the principle of the necessity of an insurable interest in an assignee to controversies between the assignor, or his personal representatives, and the assignee. Helmetag's Adm'r v. Miller, supra; Troy v. London, supra; Ingram v. Johnson, supra; Sands v. Hammell, supra.

■■ Here again it is not necessary to our purposes to settle that controversy, if in fact there is one, because the right of appellant, the insured, to relief is controlled by the validity and extent of his assignment to the bank. The bank without question had an insurable interest, and could accept an assignment as collateral security for the debt due it by insured. The insurer raises no question about the insurable interest of the subassignee, and neither does the bank as the subassignor. If the subassignee has no right because of the want of an insurable interest, the insured is not in this suit interested in the question. If he made a valid assignment to the bank, his rights are limited by such a contract, and not by the disposition which may have been made of the policies by the bank within the valid provisions of the assignment to it.

As we have said, our judgment is that the disability benefits were assigned to the bank to secure a small debt for money presently advanced, and that the death benefits were assigned as security for the whole of the debt. Since the debt for which the disability benefits were assigned has been paid, the right of insured to them is now unaffected by the assignment to the bank or by it to Mrs. Amos; so that they are by us awarded to appellant. The debt, secured by the death benefits and other rights in the policies, has not been paid, but is shown to exceed by a large amount the value of such rights. They were properly held by the court not to be the property of the insured, and there was no error in awarding them to Mrs. Amos.

The decree of the circuit court, in equity, is modified to that extent, and so as to tax the costs of the cause equally between appellant and Mrs. Amos. As modified it is affirmed. The costs of appeal are likewise taxed equally between them.

Modified and affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.