**Nan W. ROBERTSON, as Executrix of the Estate of James S. Robertson, Deceased, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 19472.**

United States Court of Appeals
Fifth Circuit.

Nov. 7, 1962.

---

Edward M. Selfe, Birmingham, Ala., Lee C. Bradley, Jr., Hobart A. Mc-Whorter, Birmingham, Ala., White, Bradley, Arant, All & Rose, Birmingham, Ala., of counsel, for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert L. Waters, Loring W. Post, Harold M. Seidel, Attys., Dept. of Justice, Washington, D. C., Macon L. Weaver, U. S. Atty., Birmingham, Ala., for appellee.

Before RIVES, CAMERON and BROWN, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a judgment denying recovery of federal estate taxes assessed against and collected from the

estate of James S. Robertson.[1] The appellant asserts error in the disallowance of the claim of a marital deduction in the amount of $90,496.52, the value of the property which the widow took under Mr. Robertson's will.

Mr. Robertson; his wife, Nan W. Robertson; and his children, two adult daughters, all resided at Tuscaloosa, Alabama, where his will was executed on January 14, 1947. Mr. Robertson died on April 7, 1952. During the same month his will was admitted to probate and his widow qualified as executrix.

Both parties agree that the interest passing to the widow was, under the law of Alabama, a base or determinable fee,[2] and was thus a nondeductible terminable interest,[3] unless brought within the exception provided by Sec. 812(e) (1) (F) of the 1939 Internal Revenue Code as amended by Sec. 93(a), the Technical Amendments Act of 1958, 72 Stat. 1606:

> "(F) *Life estate with power of appointment in surviving spouse.*— In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse—

> "(i) The interest or such portion thereof so passing shall, for purposes of subparagraph (A), be considered as passing to the surviving spouse, and

> "(ii) no part of the interest so passing shall, for purposes of subparagraph (B) (i), be considered as passing to any person other than the surviving spouse.

> "This subparagraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific portion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events."

The appellee does not dispute that the determinable fee willed to the widow entitled her for life to all the income from that share of the estate payable at least annually.[4] The issue is thus narrowed to whether the power of appointment vested in the widow by the terms of the will meets the requirements of Sec. 812 (e) (1) (F) as amended, quoted *supra* The appellant urges three insistencies:

(1) That the widow, as a beneficiary of the estate, had a power of appointment which qualified for the marital deduction;

(2) That by virtue of her right to become executrix and as such to distribute her one-half interest in the estate to herself as a beneficiary at any time, she had in substance the required power of appointment; and

(3) That the district court should have received parol evidence bearing on the construction of the will.

 To come within the exception provided by Sec. 812(e) (1) (F) as amended, *supra*, the power must satisfy

---

1. Based on a full opinion reported at D.C., 199 F.Supp. 78.

2. Boshell v. Boshell, 1928, 218 Ala. 320, 118 So. 553, 555.

3. Sec. 812(e) (1) (B) of the Internal Revenue Code of 1939.

4. Under Sec. 77 of Title 58 and Sec. 293 of Title 61, Code of Alabama 1940, and Treasury Regulation 105 (1939 Code), Sec. 81.47a(c).

a number of conditions. Among others, the widow must be able to appoint a fee simple interest in the property subject to the power, and the power must be exercisable immediately following the decedent's death. On the other hand, the fact that the appointee under the power takes subject to the executor's rights of administration does not disqualify the interest for the marital deduction.[5]

■ We, of course, turn to state law to determine the nature and extent of the power vested by the will in the widow.[6] Here too there is no disagreement as to the basic rules of construction.

"The fundamental rule in the construction of wills is that the intention of the testator is the controlling factor, and his intent must be gathered from the will in its entirety, and each clause or provision should be so interpreted as to avoid an irreconcilable conflict when reasonably susceptible of such a construction." Curlee v. Wadsworth, Ala. 1962, 136 So.2d 886, 888.

"And, of course, the testator's intention is the pole star to guide a court in the construction of a will and in arriving at the testator's intention the court should consider the instrument as a whole and not construe any paragraph separately." Wilson v. Skelton, 1955, 262 Ala. 504, 80 So.2d 633, 635.

"At the outset, it should be fixed firmly in mind that the ultimate purpose and duty of the courts in construing any will is to ascertain the intention of the testator and give it effect to the extent which the law will permit. * * * To this end the court will put itself as far as possible in the testator's position by taking into consideration the circumstances surrounding him at the time of the execution of the will.

* * * Further, the court will consider the will itself as a whole, giving effect to each of its provisions, if possible, so as to form one consistent scheme effectuating the intention of the testator." Bell v. Killian, 1957, 266 Ala. 12, 93 So.2d 769, 773.

■ "A clearly expressed condition of one part of the will cannot be controlled by a doubtful construction of another part." Wilder v. Loehr, 1924, 211 Ala. 651, 101 So. 591, 593.

"The fundamental rule of construction is to consider the document as a whole, with a view to give effect to its full intent. This requires that each item of the will be given effect, each provision a field of operation, unless the entire document forbids such construction.

■ "True, in the absence of conflict or ambiguity in the terms of the will, it must speak for itself. But seeming conflict calls for construction, interpretation; the testator's intent being the ultimate end in view.

■ "The rule giving the later provision of a will precedence as the last expression of the testamentary purpose has no place except in case of irreconcilable conflict, where both cannot be given effect upon a fair interpretation of the whole instrument." Cox v. Hale, 1927, 217 Ala. 46, 114 So. 465, 466.

The difficulty is not with the rules of law, either federal or state, but with the application of those rules to the particular will. By Item II the testator appoints his wife, Nan W. Robertson, as Executor of and Trustee under his will, and if she should fail to act, then, successively his two daughters or either of them, and thereafter the City National Bank of Tuscaloosa. Item II concludes:

5. Treasury Regulation 105 (1939 Code), Sec. 81.47a(c).

6. Helvering v. Stuart, 1942, 317 U.S. 154, 162, 63 S.Ct. 140, 87 L.Ed. 154.

" * * * I give my Executor and Trustee full and complete right, authority and power to lease, sell, convey, mortgage, pledge, encumber, dispose of and handle and administer all of my property and estate (hereinafter called my estate) as fully and completely as I could do if living, without any authority or order from any Court or person, and the enumeration of special powers in this will shall not reduce or limit the general powers herein given my Executor and Trustee."

Item III is the dispositive item of the will and is quoted in full:

"I give, devise and bequeath to my Executor and Trustee, in trust, for the benefit of my wife and daughters, all of my property, real, personal and mixed, including money, choses in action and all other property and property rights of every sort, kind and description, which I may own or be entitled to at the time of my death, to be divided among my wife and two daughters in the following proportions,— one half to my wife and one fourth to each daughter. In case of the death of either of my daughters leaving a child or children surviving her then the child or children of my deceased daughter shall take the share of the deceased parent (my deceased daughter). If either daughter of mine dies without issue, before or after I die, and before a final settlement of my estate, her share in my estate shall lapse, and my property shall be divided half to my wife and half to my surviving daughter. In all events it is my will that my wife shall receive one half of my estate, but if all my descendants die she shall take my entire estate. However, all property and benefits of my will are subject to the provisions of handling, management and other trust provisions herein. If my wife dies before final settlement of my estate, all my estate shall go to my heirs,

subject to all the terms and conditions of trust herein contained."

Item IV contains the provisions relied on as constituting a power of appointment qualifying for the marital deduction, and that item also is quoted in full:

"While my wife or either of my daughters may convey and dispose of any part or all of her share in my estate during her lifetime, in case of the death of either of my daughters leaving issue, the issue of such deceased daughter shall represent its deceased parent and take her undisposed of and remaining share of my estate, subject to all of the terms and conditions of trust stated in this will. In case of the death of either of my daughters without issue her share of my estate and all proceeds thereof not disposed of by my deceased daughter prior to her death shall vest in my other daughter, or if she be dead, then in the descendants of my other daughter, but subject to all of the terms and conditions of trust contained in this will. Also, if any grandchildren of mine shall receive any share of my estate and die childless before becoming twenty-one years of age, such share shall lapse and vest in the brothers and sisters of such grandchild or grandchildren, or, if there are none, then in my other daughter or her descendants. That is, I provide and specify that no part or share of my estate or the proceeds thereof be inherited from any beneficiary of my estate by and one other than my wife or my descendants. However, final vesting shall not be postponed beyond twenty-one years after my death or my youngest grandchild's becoming twenty-one years of age, whichever is sooner. Thus, it is my wish and will that any inheritance from any child or grandchild of mine shall not be by or in favor of any one except my wife and our descendants, prior to the majority of my young-

est grandchild or twenty-one years after my death, whichever is sooner. However, any adult beneficiary of my will shall always have the right, power and authority to sell and convey and fully dispose of any part or all of her interest in my estate and give full and complete title thereto, during her lifetime, but until division or partition or allotment of my estate or shares therein to the beneficiaries of my will, my Executor and Trustee shall have full and complete charge of my estate and the management and handling thereof.

"In the event that all of my descendants die before or after I die and before the settlement of my estate, then it is my wish that all of my estate shall vest entirely in my wife."

Item V vests very broad powers in the Executor and Trustee and provides that the wife as Executor and Trustee "may, at any time, terminate this trusteeship and may partition and divide my estate between herself (my wife) and our daughters in the proportion set out herein and give and convey full and complete title to herself and them in any way she sees fit."

By Item VI, also, it is provided:

" * * * my Executor and Trustee may, at any time she sees fit, partition, divide or distribute any part or all of my estate, and give and convey full and complete title thereto in any way which she may determine, my Executor and Trustee always having the right and authority to dispose of any and all of my

estate fully and completely for any purposes stated in my will."

Item VII provides that, "The administration of my will and estate may be closed and my estate be fully and completely divided at any time that may be determined by my Executor and Trustee."

Item X is the part of the will apparently most inconsistent with an intention of giving the widow an unrestricted power of appointment during the critical period prior to final settlement of the estate. That article reads:

"During the existence of my trust estate, no individual beneficiary of my will shall take any title to or right to possession or sale or partition of any part of my estate or property, but complete possession and right to conduct and handle and exclusive right of sale, partition, division and handling shall be in my Executor and Trustee. However, my Executor and Trustee may at any time convey and deliver to any beneficiary of my will complete possession of and title to any part of my property as or on account of the share of such beneficiary in my estate, thereby making such conveyance full, complete and final, as to the property or assets therein included."

In the concluding Item XI, the testator claims for each beneficiary the exemptions and benefits of Sec. 1 of Title 58 of the 1940 Code of Alabama.[7]

If the wife survived a final settlement of the estate, then by Item III she became the absolute owner in fee simple of a one-half interest in all of its prop-

---

7. "1. *Express trust for support and maintenance of relative.*—It is lawful for any person or owner of property to convey or devise any of his real estate or personal property to another in trust to receive and pay the profits or income not to exceed eighteen hundred dollars annually for the support and maintenance of any child, grandchild, or other relation by blood or marriage, with remainder as the grantor or devisor shall pro-

vide, during a period of time not exceeding the limit fixed by law as to perpetuities; and the property so conveyed and the income or profits therefrom shall not be liable for or subject to be seized or taken in any manner for the debts of such child, grandchild, or other relation, whether the same be contracted or incurred before or after the creation of such trust."

erty. There was no reason to give her a power of disposition to be exercised after final settlement. We agree with appellant therefore that, in order to give operative effect to the power of disposition vested in the widow by Item IV, it must be capable of being exercised prior to final settlement of the estate.

To repeat, the first clause of Item IV provides: "While my wife or either of my daughters may convey and dispose of any part or all of her *share* in my estate during her lifetime * * *." (Emphasis supplied.) The last sentence provides: "However, any adult beneficiary of my will shall *always* have the right, power and authority to sell and convey and fully dispose of any part or all of her *interest* in my estate and *give full and complete title thereto*, during her lifetime, but until division or partition or allotment of my estate or shares therein to the beneficiaries of my will, my Executor and Trustee shall have full and complete charge of my estate and the management and handling thereof." (Emphasis supplied.) We agree with the appellant that the words "interest" and "share" are significant, and include an undivided fractional interest or share in the estate, as well as ownership of particular properties.

Appellee urges that any power of disposition vested in the widow, prior to final settlement "was simply the power created by state law to alienate a vested interest, subject to divestiture, which would not enable her to convey an unqualified interest in the property." That argument, however, overlooks the intention evidenced by the phrase which we have emphasized "and give full and complete title thereto." It fails also to take into account that the same words are used to vest powers of disposition in the wife and in each of the two daughters. The daughters' shares did not become absolute fee simple estates upon final settlement, but contained limitations over to their children. Significantly, Item IV provides that the issue of a deceased daughter would take her "*undisposed of* and remaining share of my

estate," and that if a daughter died without issue, the other daughter or her descendants would take "her share of my estate and all proceeds thereof *not disposed of* by my deceased daughter prior to her death." (Emphasis supplied.) The words "undisposed of" and "not disposed of" reveal clearly the intention of the testator to give each of his daughters a power to dispose of any part or all of her share and to "give full and complete title thereto," an absolute power of disposition. There is no reason to conclude that, by the same language, the widow is vested with any less power of disposition.

It is true that the dispositive Item III does not take account of the exercise of any power of disposition. Powers of disposition are the particular subject of the succeeding Item IV. The concluding sentence of Item III must necessarily be subject to the power granted the widow in Item IV, for the widow could exercise a power of disposition at no time other than before final settlement of the estate.

The appellee urges, however, that Item X denies absolutely to any beneficiary the right to dispose of anything until the estate has been settled. We believe the words "interest" and "share" may furnish the key or clue by which the intentions evidenced by Items IV and X may be harmonized. Let us again quote the provisions of Article X but with emphasis upon certain particular words.

"During the existence of my trust estate, no individual beneficiary of my will shall take any title to or right to possession or sale or partition *of any part of my estate or property*, but complete *possession* and right to conduct and handle and exclusive right of sale, partition, division and handling shall be in my Executor and Trustee. However, my Executor and Trustee may at any time convey and deliver to any beneficiary of my will complete possession of and title *to any part of my property* as or on account of the *share* of such beneficiary in my es-

tate, thereby making such conveyance full, complete and final, as to the *property or assets* therein included." (Emphasis supplied.)

While confessedly the meaning could be more clearly expressed, it seems to us that Article X has reference to the particular physical properties as to which it reserves the rights of possession, sale, partition, division and handling—the normal administrative powers—in the Executor and Trustee. That would not limit or forbid the widow's power to dispose of her "share" or "interest" in the estate, an undivided fractional "interest" or "share" which need not take from the Executor and Trustee the title to or possession of any particular part or property of the estate. If Article X is so construed, it is entirely consistent with Article IV, and particularly with the concluding provision of Article IV. " * * * but until division or partition or allotment of my estate or shares therein to the beneficiaries of my will, my Executor and Trustee shall have full and complete charge of my estate and the management and handling thereof." The testator did not consider the provision just quoted to be inconsistent with the absolute power of disposition of "any part or all of her interest in my estate," expressed in the earlier part of the same sentence. If possible, Article X should also be construed to avoid any irreconcilable conflict with Article IV. We believe that is not only possible but that it is accomplished by a proper construction of Article X to carry out the intention of the testator.

■ Reading the will as a whole, it appears that Mr. Robertson intended to throw around his wife and daughters and their issue as much protection as possible, including even a spendthrift trust, but all subject to the very broadest powers of disposition of the respective interests or shares by the daughters and more especially by the wife.[8]

We, therefore, hold with the appellant in her first insistence that the widow, as a beneficiary of the estate, had a power of disposition which qualified for the marital deduction, and we do not reach the other insistences. The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

---

8. The broad powers given the wife in her capacity as Executrix and Trustee lend weight to this conclusion.