James M. KIDD, Sr., Plaintiff,

v.

George D. PATTERSON, District Director of Internal Revenue for District of Alabama, Defendant.

Civ. A. No. 10126.

United States District Court
N. D. Alabama, S. D.

June 4, 1964.

Pritchard, McCall & Jones, and Winston B. McCall, Birmingham, Ala., for plaintiff.

Macon L. Weaver, U. S. Atty., and E. Ray Acton, Asst. U. S. Atty., Birmingham, Ala., and John B. Jones, Jr., First Asst. Atty., Edward S. Smith, George A. Hrdlicka and Gary P. Smith, Attys., Dept. of Justice, Washington, D. C., for defendant.

LYNNE, Chief Judge.

Fully stipulated by the parties, the critical facts may be tightly compressed. Prior to September 22, 1958, plaintiff, James M. Kidd, Sr., was the owner of four policies of life insurance issued on his life by the Equitable Life Assurance Society of the United States, which, as of that date, had an aggregate value of $35,409.39. On September 22, 1958, plaintiff made written application to Equitable for a "change of ownership" of each of such policies and, contempo-

raneously, forwarded a new beneficiary provision [1] for attachment to each policy. Having approved and acted upon such application, by endorsement on each policy,[2] dated October 3, 1958, Equitable named plaintiff's wife as "owner" of each policy and his children as alternative "owners" in the event of his wife's death before his own.

For the calendar year 1958, plaintiff filed a gift tax return in which he reported a gift to his wife, Mrs. Mabelle Kidd, of the four policies. Subtracted from the total value of such gift was an annual exclusion of $3,000, and a marital deduction of $17,704.70, resulting in a taxable gift in the amount of $14,704.69, upon which plaintiff paid a gift tax of $1,647.-07.

The Commissioner disallowed the marital deduction on the ground that the assignment to the wife constituted the transfer of a terminable interest within the purview of Section 2523 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 2523. A deficiency in gift taxes was assessed accordingly, which was paid by plaintiff. Thereafter, plaintiff filed a timely claim for refund, which was disallowed, and this action was timely instituted.

Determination of the ultimate question as to whether the gift by plaintiff to his wife of the four insurance policies quali-

1. The beneficiary provision attached to each policy reads as follows:
"1. A. Settlement of the net sum due under this policy by reason of the death of the Insured shall be made with the Insured's wife, MABELLE B. KIDD, if living at the death of the Insured as provided in paragraph 2.
"B. Should said wife not be living at the death of the Insured but should the Insured's daughter, ELEANOR E. KIDD, the Insured's sons, JAMES M. KIDD, JR. and WILLIAM BRADFORD KIDD, or any of them, then be living, settlement of the said net sum shall be made as provided in paragraph 3.
"C. Should said wife, said daughter and said sons not be living at the death of the Insured, the said net sum shall be paid in a single sum to the executors or administrators of the last survivor of said wife, said daughter and said sons.
"2. A. The amount becoming due to said wife under paragraph 1.A. shall be applied under Option 3 (TEN YEARS CERTAIN) of the Optional Modes of Settlement, payable monthly.
"B. Upon the death of said wife, any unpaid instalments under Option 3 shall be paid when due to said daughter, if then living, if not then living in equal shares to said sons if then living or to the survivor of them if then living. Upon the death of the last survivor of said wife, said daughter and said sons, the commuted value of unpaid instalments under Option 3 shall be paid in a single sum to the executors or administrators of such last survivor.
"3. The amount becoming due under paragraph 1.B. shall be applied under Option 2 of the Optional Modes of settlement payable in ONE HUNDRED EIGHTY MONTHLY instalments. The said instalments shall be paid when due to said daughter, if then living, if not then living in equal shares to said sons if then living or to the survivor of them if then living. Upon the death of the last survivor of said daughter and said sons, the commuted value of unpaid instalments under Option 2 shall be paid in a single sum to the executors or administrators of such last survivor."

2. Each endorsement reads as follows:
"The Owner of this policy is the Insured's wife, MABELLE B. KIDD, and after her death shall be the Insured's daughter, ELEANOR E. KIDD, and after the death of the survivor of said wife and said daughter shall be the Insured's sons, JAMES M. KIDD, JR. and WILLIAM BRADFORD KIDD, jointly or survivor, and after the death of the last survivor of said wife, said daughter and said sons shall be the executors or administrators of such last survivor.
"A person while thus vested with the rights of Owner may, prior to the death of the Insured, exercise the rights conferred upon the Owner by the terms of this policy without the consent of any other person referred to in this policy and, subject to the Society's approval, change the ownership hereof."

fies for the allowance of a marital deduction under Section 2523 of the Internal Revenue Code of 1954 depends upon the Court's disposition of defendant's contention that the assignments of the insurance policies operated to assign to the spouse of the donor a terminable interest in such policies within the meaning of the statute [3] and the interpretative regulations.[4]

3. In pertinent parts, 26 U.S.C.A. provides:
"§ 2523. Gift to spouse.
"(a) *In general.*—Where a donor * * * transfers * * * by gift an interest in property to a donee who * * * is the donor's spouse, there shall be allowed * * * a deduction * * *.
"(b) *Life estate or other terminable interest.*—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, such interest transferred to the spouse will terminate or fail, no deduction shall be allowed with respect to such interest—
"(1) if the donor retains in himself, or transfers * * * to any person other than such donee spouse * * * an interest in such property, and if by reason of such retention or transfer the donor * * * or such person * * * may possess or enjoy any part of such property after such termination or failure of the interest transferred to the donee spouse * * *.
"(e) * * * if by such transfer his spouse is entitled for life to all of the income * * * with power in the donee spouse to appoint the entire interest * * * and with no power in any other person to appoint any part of such interest * * *—
"(1) the interest * * * shall, for purposes of subsection (a) be considered as transferred to the donee spouse, and
"(2) no part of the interest * * * so transferred shall, for purposes of subsection (b) (1), be considered as retained in the donor or transferred to any person other than the donee spouse.
*"This subsection shall apply only if, by such transfer, such power in the donee spouse to appoint the interest, or such portion * * * is exercisable by such spouse alone and in all events.* (Emphasis added.)"

4. The relevant regulations are:
"(a) In general. Section 2523(e) provides that if an interest in property is transferred by a donor to his spouse (whether or not in trust) and the spouse is entitled for life to all the income from the entire interest or all the income from a specific portion of the entire interest, with a power in her to appoint the entire interest or the specific portion, the interest transferred to her is a deductible interest, to the extent that it satisfies all five of the conditions set forth below (See Par. b of this section if one or more of the conditions is satisfied as to only a portion of the interest):
"(1) The donee spouse must be entitled for life to all of the income from the entire interest or a specific portion of the entire interest, or to a specific portion of all the income from the entire interest.
"(2) The income payable to the donee spouse must be payable annually or at more frequent intervals.
"(3) The donee spouse must have the power to appoint the entire interest or the specific portion to either herself or her estate.
"(4) The power in the donee spouse must be exercisable by her alone and (whether exercisable by will or during life) must be exercisable in all events.
"(5) The entire interest or the specific portion must not be subject to a power in any other person to appoint any part to any person other than the donee spouse."
Federal Tax Regulations, Gift Tax, § 25.2523(e)–1.
"A power is not considered to be a power exercisable by a donee spouse alone and in all events as required by paragraph (a) (4) of this section if the exercise of the power in the donee spouse to appoint the entire interest or a specific portion of it to herself or to her estate requires the joinder or consent of any other person * * *."
Federal Tax Regulations, Gift Tax, § 25.2523(e)–1(J) (3).
"[A] power is not 'exercisable in all events' if it may be exercised for a limited purpose only * * *. [I]f there are any restrictions either by the terms of the instrument or under applicable local law, on the exercise of a power to consume property * * * for the benefit of the spouse, the power is not exercisable in all events. Thus, if a power of invasion is exercisable only for the spouse's support, or only for her limited use, the power is not exercisable in all events. In order for a power of invasion to be exercisable in all events, the donee spouse must have the unrestricted power exercisable at any time during her life to use all or any part of the property subject to the

■ It is conceded, as it must be, that local law is controlling with respect to the nature of the legal interests and property rights created by the assignments in question, while federal law regulates the tax consequences of the interests or rights conveyed. Helvering v. Stuart, 317 U.S. 154, 63 S.Ct. 140, 87 L. Ed. 154 (1942); Morgan v. Commissioner of Internal Revenue, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585 (1940); Blair v. Commissioner of Internal Revenue, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465 (1937); Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199 (1932); Robertson v. United States, 310 F.2d 199 (5th Cir. 1962); McGehee v. Commissioner of Internal Revenue, 260 F.2d 818 (5th Cir. 1958); Carlson v. Patterson, 190 F.Supp. 452 (N.D.Ala.1961); and Berman v. Patterson, 171 F.Supp. 800 (N.D.Ala.1959).

In this non-diversity action the Court perceived that there lurked an intriguing conflict-of-laws problem in determining a federal matter. Since both Alabama, of which plaintiff, his wife and his children are residents, and New York, both the place of contracting and the place of performance, have significant contacts with the contracts of insurance and their assignments, it was suggested that this Court should regard the choice of law as a federal matter. The Court has been spared an excursion into this unsettled area of the law [5] by the oral concession of counsel of record that the substantive law of Alabama shall be applied to admeasure the property rights passing to plaintiff's wife under the assignments in question, a result at which this Court would undoubtedly have arrived in the exercise of its independent judgment.

Turning to the endorsements of October 3, 1958, it is quite apparent that, by their terms, in the event Mrs. Kidd predeceases her husband without having taken any action with respect to the ownership or the right to the proceeds of such policies, the property rights assigned by plaintiff to his children as alternative owners would be automatically vitalized. Thus, prima facie, the gift is characterized by Section 2523(b) as one of a terminable interest unless it qualifies as an exception to the terminable-interest rule as engrafted by Section 2523(e).

To clarify the competing contentions of the parties hereto the Court casts them in the familiar form of a subject of debate, Resolved: That, under the terms of the endorsements, the power in Mrs. Kidd to appoint the entire interest in each policy *is exercisable by her alone and in all events.* Plaintiff maintains the affirmative, defendant the negative.

■ Insisting that Mrs. Kidd did not have the power to appoint the interest in such policies, *exercisable by her alone,* defendant seizes upon the limitation on her right to change the ownership of such policies expressly made subject to the insurer's approval.

While arid literalism lends ostensible support to this argument, it ignores the reality of the manner in which the gifts were effectuated. Actually, by the endorsements of October 3, 1958, new contracts were entered into between Equitable and Mrs. Kidd. Thereby she became effectively invested with the entire parcel of powers and rights with respect to such policies theretofore residing in her donor.

Although the power to direct a change of ownership is significant and does require the approval of the insurer, the provision requiring approval is solely for the benefit of the company and only the company can take advantage of it.[6] The experience of trial courts in interpleader actions justifies the understandable desire

power, and to dispose of it in any manner, including the power to dispose of it by gift (whether or not she has power to dispose of it by will)."
Federal Tax Regulations, Gift Tax, § 25.2523(e)–1(g) (3).

5. 1A Moore, Federal Practice ¶ 0.325 (2nd Ed.1953).

6. Hamilton v. Hamilton, 255 Ala. 284, 51 So.2d 13 (1950); Missouri State Life Ins. Co. v. Robertson Banking Co., 223 Ala. 13, 134 So. 25 (1931).

of the insurer to retain some measure of control over the identity of a new owner to avoid entering into a contract with a fictitious person or a purported trustee without any trust agreement.

Resorting to the ownership provisions of the policies, it clearly appears that Mrs. Kidd, as owner, enjoys the contractual rights to name and change beneficiaries, to borrow on and pledge the policies for a loan, and to assign the policies without requiring the consent of any beneficiary or successor-owner referred to therein.[7] Her control of each policy is as absolute as was that of her donor.

Notwithstanding the bundle of contractual rights to which the Court has alluded, defendant asserts the proposition that the law interdicts the arbitrary exercise by Mrs. Kidd of such rights and requires of her the exercise of good faith with regard to the rights of the alternative owners. Hence, the argument runs, such a requirement imposes a limitation on her power of appointment which reduces it to less than is needed to meet the *"in all events" test*.

■ In the construction of assignments of life insurance policies, as with all written instruments, the cardinal rule is to ascertain and give effect to the intention of the parties. This is true regardless of technical rules of construction. To this end, the courts endeavor to give the same construction and effect as the parties themselves apparently gave it.[8]

After canvassing the pertinent Alabama authorities this Court observed in Carlson v. Patterson, D.C., 190 F.Supp. 452 (1961), that "Implicit in the opinions of the Supreme Court of Alabama * * * is recognition of the widely accepted proposition that an absolute power of disposition, including the power to make an inter vivos gift of all or a part of the corpus, may be given by a testator to a life tenant under a will, where such intention is clearly expressed."

■ This Court has no difficulty in concluding that plaintiff intended to give to his wife absolute ownership and complete dominion over the policies of insurance, including an absolute power of disposition by gift or otherwise, entirely adequate to meet the *"in all event" test*.

■ Remaining for consideration is a point which was not discussed by counsel in briefs but which this Court conceives to be relevant to the inquiry as to whether the power of appointment is exercisable by Mrs. Kidd in all events. Under Alabama law an assignment of a policy of life insurance by the insured to one without an insurable interest in his life is void as against public policy. As to whether or not a second or subassignee would be affected with the same disability, there is some confusion in the reported cases.[9] However, for the purpose

7. Fourth National Bank v. Woolfolk, 220 Ala. 344, 125 So. 217 (1930).

8. Taylor v. So. Bank & Trust Co., 227 Ala. 565, 151 So. 357 (1934); Metcalf v. Montgomery, 229 Ala. 156, 155 So. 582 (1934); Summers v. Ralston Purina Co., 260 Ala. 166, 69 So.2d 858 (1954).

9. By an unbroken line of authorities in Alabama it has been held that an assignment of a policy of life insurance by the insured to one without an insurable interest in his life is void as against public policy. There is some confusion as to whether a second or subassignee is affected with the same disability. The case of Haase v. First National Bank of Anniston, 203 Ala. 624, 84 So. 761 (1920), did not so extend the rule provided the first assignee, as did Mrs. Kidd, had a

valid assignment. The later case of Ingram v. Johnson, 226 Ala. 68, 147 So. 172 (1933) left the question open and seemed to cast doubt on the principle so asserted. In Metcalf v. Montgomery, 229 Ala. 156, 155 So. 582 (1934) the Court did not find it necessary to settle that controversy.

In the leading Alabama case of Helmetag's Adm'r v. Miller, 76 Ala. 183 (1884), it was argued that a policy taken out by a person on his own life, and thus valid in its inception, cannot become a wager policy by the mere fact of its assignment. In rejecting this contention, the Court stated:

" * * * The reason of the law which vitiates wager policies, is the pecuniary interest which the holder has in procuring the death of the subject of in-

of this opinion and as a forecast which might or might not survive the year, it is assumed that an assignment of these policies of insurance to a person who has no insurable interest in the life of the insured would be unenforceable by such person as against public policy. But this rule of local law does not operate as a restriction on the exercise of Mrs. Kidd's power to consume property or to appoint her interest therein. It merely operates to delimit the class of persons to whom a meaningful assignment might be made.

For the foregoing reasons, the Court is of the opinion that the Commissioner erred in disallowing the claimed marital deduction and that plaintiff is accordingly entitled to a refund of the gift tax deficiency erroneously assessed and collected, together with interest as allowed by law.

surance, thus opening a wide door by which a constant temptation is created to commit for profit the most atrocious of crimes. This reason applies with exactly the same force, to holding a policy by purchase, or assignment, as to holding one originally by direct issue from the insurance company. Otherwise the law would permit that to be done by in-

direction, which it prohibits from being done directly, and the end sought to be accomplished could practically be evaded with both facility and impunity."
It would seem that the rationale of Helmetag's Adm'r would extend the same public policy to assignee and subassignee alike.